IN ERROR.
......
ALBANY,
Feb 1812.

JESSE BUEL AND OTHERS, *Appellants*,

*against*

RANDALL S. STREET AND OTHERS, *Respondents*.

BUEL
v.
STREET.

THE respondents filed their bill in the court of chancery on the 1st of *June*, 1811, against the appellants. It appeared from the bill, that the appellants were appointed commissioners, by the act of the legislature, passed the 22d of *March*, 1811, incorporating the stockholders of the *Middle District Bank*, for the purpose of opening books, on the first *Tuesday* of *May*, 1811, in *Poughkeepsie* and *Kingston*, for the subscription of shares to the bank, at 25 dollars each; 2 1-2 *per cent.* on each share to be deposited at the time of subscription, and the whole number of shares not to exceed 20,000, exclusive of such as might be subscribed by the state; if more than that number of shares was subscribed, the excess was to be apportioned among the subscribers. The appellants were also appointed inspectors of the first election of directors. While the book was opened at *Poughkeepsie*, the respondents subscribed, and paid, at the same time, 2 1-2 *per cent.* on each share, by them subscribed respectively. *Buel* and some others of the appellants were the commissioners for opening the book at *Kingston*. The bill further stated that *Buel*, on the afternoon of the 24th of *March*, 1811, took possession of the subscription book, and kept it in his exclusive possession, until 10 o'clock in the evening; and while it was in his possession, subscribed shares, by proxy, for others, to the number of twenty or thirty thousand, many of which were in the names of persons insolvent, and that neither *Buel*, nor any of the commissioners present at *Kingston* examined the powers authorizing subscriptions to be made by *Buel*, if any such existed, and the sum of 2 1-2 *per cent.* on the amount of shares so subscribed by *Buel*, as directed by the act of incorporation, was not paid or deposited by him or any other person. That while the subscription book was in the possession of *Buel*, as aforesaid, several persons duly authorized by others to subscribe for them, and in their names, were waiting for an opportunity to subscribe, and were ready to pay the deposite required by the act, and repeatedly solicited permission to subscribe, which

*Marginal note:* No appeal lies to this court, from an order of the court of chancery for an attachment to bring up a party to answer interrogatories, for a contempt, in disobeying a writ of injunction, issued in a cause.

*It seems* that an appeal will not lie from any interlocutory order which does not involve a decision upon some matter, touching the merits of a cause, and by which the party is aggrieved.

was not granted.   That in several instances more was subscribed than the persons subscribing were authorized; and in other instances no deposites were made on the shares subscribed; and that the respondents had requested *Buel* and the other commissioners to expunge from the subscription book the subscriptions thus irregularly and illegally made by *Buel*; which the commissioners had not done.   The bill, besides requiring an answer to the several matters, prayed that a writ of injunction might be issued, to restrain the said commissioners from acting as inspectors of the election of directors of the said bank, and from making any certificate of any such election, and from delivering to any person whatever the said subscription books, or money deposited on the shares so subscribed, and from taking any measures whatever to organize the said bank.   The bill was sworn to by *Jacob Johnston*, one of the respondents; and an injunction was issued thereon, according to the prayer of the bill.

On the 29th of *July*, 1811, the answer of some of the appellants was filed, and on the 31st of *August*, 1811, the answer of the other appellants was also put in and filed.   Previous to filing the answers, an *order* was made by the chancellor, on the 8th of *July*, 1811, requiring the appellants to *show cause*, on the first day of the then next term of the court of chancery, why an *attachment* should not issue against them, for disobeying and violating the injunction which had been issued.   At the *October* term, the appellants showed cause, referring to the matters set forth in their answer.   After hearing the matter argued by the counsel of the parties, the chancellor, on the 23d of *January*, 1812, made the following order: " The counsel for the complainants, and the counsel for the defendants, in the above cause, having been heard during the last *October* term, on the subject matter of the order made in this cause, on the eighth day of *July* last, that *Jesse Buel* (and others) show cause on the first day of the then next term, at, &c. why an attachment should not issue against them for violating the injunction issued in this cause, and due deliberation thereupon being had, &c.  *It is ordered* that process of attachment issue against the said *Buel*, (and the appellants, naming them,) directing the sheriffs of the counties in which they respectively reside, to bring them before the court on some day of the next term after the same shall issue, to answer upon interrogatories touching the contempt alleged to have been committed by them, in violating the process of this court, and to be further dealt with accord-

ing to law." From this order the defendants below appealed to
this court, and the appeal was accordingly entered and filed.

*Baldwin,* for the respondents, now moved to quash or dismiss the appeal with costs. He contended, that an appeal would not lie from such an order, which could not touch the merits of the cause.
The constitution, in speaking of this court, mentions only appeals from *decrees* in equity, on which the chancellor is required to assign his reasons for the decree. The act organizing the court,* says, that " All persons aggrieved by any sentence, judgment, decree, or order of the court of chancery, may appeal from the same or any part thereof." By the word *order* must be understood, such an order as affects the merits of the case, and by which the party is aggrieved. Will an appeal lie from every order which the chancellor may make, in the progress of a cause, or to regulate the practice of his court? According to the course and practice of the court of chancery, twenty different orders may be necessary in the progress of a suit, before it can be brought to a final hearing. If appeals are to be allowed from all these orders, it would produce the most ruinous consequences to the parties, and extreme embarrassment to the court. While one appeal was pending, a party might die; the cause must then be remanded, to bring in the representatives of the deceased party; and so in every appeal. Witnesses might also die in the mean time, and their testimony be lost. It would be impossible to predict the final end of a cause, if such a practice should be tolerated.

How can the chancellor assign special reasons for the numerous orders made by him, regulating the practice of his court? The object and business of this court is to settle the law, and put a final end to controversies ; not to decide on points of practice, which must be, in some degree, arbitrary.

Besides, it may be that the respondents, when they come to answer on the interrogatories, will purge themselves from all contempt as to violating the injunction. Why, then, should this court interfere before they have been heard, and the chancellor has decided on the sufficiency of the excuse ?

*Henry,* contra. The constitution declares that a court shall be instituted for the trial of impeachments and the correction of errors, under the regulations which shall be established by the legislature. We must look, then, to the statute organizing this court ; and that

*IN ERROR.*
......
ALBANY,
Feb. 1812.

BUEL
v.
STREET.

gives an appeal from every sentence, judgment, *decree* and *order* of the court of chancery.

An appeal does not suspend the proceeding in the cause, except so far as relates to the interlocutory matter appealed from. The appeal in this case is sufficient to possess this court of the merits, and to enable it to decide on the whole jurisdiction of the court of chancery, as to this injunction.

In *England,* the house of lords, upon the model of which this court is formed, has "a jurisdiction ample and uncircumscribed, comprehending all interlocutory orders, as well as the final decree, and including a power of referring and modelling the necessary relief."*

The answer of the appellants admits the facts, disclaims the contempt, and denies the jurisdiction of the chancellor. The matter has been discussed and decided upon by the court of chancery, as appears from the order itself. The appellants have answered all that could be extorted from them on interrogatories.

* 1 *Woodd.* 232—240. 4 *Johns. Rep.* 510.

*T. A. Emmet,* in reply, said that *Wooddeson,* cited by the other side, showed what orders were the subject of appeal. They must affect the rights of the parties and the relief prayed.

In the case of *The Trustees of Huntington* v. *Nicoll,*† this court decided that an appeal would not lie from a temporary order of a court of chancery awarding an injunction.

† 3 *Johns. Rep.* 516.

You might as well sustain an appeal from a *subpœna,* on the ground of its being an *order* of the court. An attachment is merely the first process of investigation. Who ever heard of an appeal from such an initiatory order? The appeal is premature, disorderly, and unprecedented. The only question raised by this motion is, whether an appeal lies from such an order? The merits of the controversy are wholly out of view. They cannot be examined by this court, until they have been brought before the court below.

YATES, J. This is an appeal from an order of the 23d of *January* last, of the court of chancery, to attach *Jesse Buel* and nine other persons, for a contempt in disobeying an injunction of that court. A motion has been made to *quash* the petition of appeal, on the ground that it cannot be sustained on such an order.

By the 8th section of the statute, regulating the proceedings in this court, in virtue of the 32d article of the constitution, it is

enacted, that all persons aggrieved by any sentence, judgment, decree or order of the court of chancery, may appeal from the same to this court.

It never could have been intended that all orders made in the progress of a cause in that court, should be subjects of appeal. Such a construction given to the statute, might, as has been observed by the respondents' counsel, so effectually impede the proceedings in chancery, as to render that court an engine of oppression. On the contrary, it appears to be a principle not controverted, that there is a class of orders arising in the progress of a cause from which no appeal lies, and a class susceptible of review by appeal. In the case of *Newkirk and Wife* against *Willett*, (*2 Johns. Cases*, 413.) the *Chief Justice*, who gave the opinion of this court, says, that " such a distinction must and does exist;" and in the case of *The Trustees of Huntington* v. *Nicoll*, (*3 Johns. Rep.* 586.) in the opinion delivered by another member of this court, the same construction is given to the statute. And in *M'Vickar* v. *Wolcott*, (*4 Johns. Rep.* 529.) that distinction is recognised.

It appears to me impracticable to establish a definite rule on this subject, as every order must, in some measure, depend on its own peculiar features, to ascertain whether it will admit of an appeal. Perhaps I might undertake to say, that such only as are grounded on facts disclosed in the bill and answer, and, consequently, connected with the merits of the controversy, when final as to the subject matter of their order, so as to enable this court to decree whether the party has been aggrieved or not, may be deemed proper subjects of appeal. If this be correct, it only remains to be inquired into, whether the order now before us is of this description.

The appellants were enjoined as commissioners not to proceed in the apportionment of certain shares, nor in the election of directors. The complainants in the court below having satisfied the chancellor that the defendants were proceeding in violation of the injunction, an order was obtained for them to show cause why they should not be attached. The cause shown was deemed by the court insufficient, and an order for the attachment was made by which the parties were to be brought in to answer on interrogatories, so that the court might come to a final determination in relation to the contempt. If such final order had been made, after they were brought into court and examined, and that had been the subject of

IN ERROR.
......

ALBANY,
Feb. 1812.

BUEL
v.
STREET.

*IN ERROR.*
......
ALBANY,
Feb. 1812.

BUEL
v.
STREET.

appeal, it would present a different question to this court, and the argument in justification as to the impossibility of a compliance with the injunction, and whether the court had jurisdiction of the cause, might, perhaps, be properly urged; but on these subjects, according to my view, it is not necessary to give an opinion.

The appeal on this order, in its nature initiatory, was premature. It behoved the defendants to have submitted to answer on interrogatories, the purpose for which the attachment was to issue, and if the alleged contempt was not purged by the answers of the defendants in the court below, the opposite party having had an opportunity, according to the course of the court, to investigate the facts in relation to it, the decretal order of the chancellor would then be deemed final as to the contempt, and the appeal might, perhaps, be sustained. My opinion, therefore, is, that the appeal be *quashed*, with costs.

KENT, Ch. J. It has been frequently admitted in this court, that there is a class of orders in chancery, which are not objects of appeal. (2 *Johns. Cases*, 413. 3 *Johns. Rep.* 586. 4 *Johns. Rep.* 528.) But there never has been any precise and definite line drawn between that class of orders which are, and that class which are not, the ground of appeal. Every person of sense and reflection will at once perceive that such a distinction does, and must, of necessity, exist. Orders of one kind or other arise upon every material step taken in the progress of a suit in chancery; and they become very frequent and numerous in a cause that is much litigated. Many of these orders relate to the process and practice of the court; and to allow an appeal from every order, would not only be absurd but intolerably oppressive. Neither the constitution, nor the statute organizing this court, ever contemplated an appeal from any decree or order that did not involve a *decision* upon some matter touching the *merits* of the controversy; for upon every appeal, the chancellor is to be called upon to assign the reasons for his decision. If we examine the cases and precedents, we shall find that appeals have never been sustained upon any other class of orders. In the present case, the question before the chancellor was touching an alleged contempt, committed by the appellants, in disobeying the process of his court, and he has made no decision upon that allegation. He has merely ordered process of attachment to bring in the party, to answer to the charge upon interrogatories. If an appeal will lie

upon this order, it will equally lie upon the award of process of
*subpœna* to the defendant to answer to a bill filed. The very
statement of the proposition shows sufficiently the unfitness of the
thing. By sustaining appeals to the extent contended for in this
instance, we should not only draw into this court the whole busi-
ness of the court of chancery, before it had become ripe for dis-
cussion and decision there; we should not only render the voice
of that court mute, and its process nugatory, but we should de-
stroy ourselves. This court would become wholly incompetent
to despatch the immensity of business, which would flow in upon
it.

I am, therefore, of opinion, that the appeal ought to be dismissed.

VAN NESS, J. concurred.

SPENCER, J. also concurred. He said that on this appeal the
merits of the cause could not be examined. The answer denies
the facts contained in the bill; and it cannot be said that the chan-
cellor was misinformed by the bill. The rule is, that where an
order is made affecting the rights of the parties, or imposing a
grievance, an appeal will lie; but not on a mere *practical* order.

THOMPSON, J. being related to some of the parties, gave no
opinion.

*Per totam Curiam.* ORDERED and ADJUDGED, that the appeal
be dismissed with costs.

Appeal dismissed.