## JOHN C. GOULDIN, RESPONDENT, v. B. R. BUCKELEW, APPELLANT.

[1] VENDOR'S LIEN—ON BOND FOR CONVEYANCE.—A vendor of real estate who makes no conveyance, but gives a bond, conditioned for the execution of a conveyance, on payment of the purchase money by the vendee, has an equitable lien on the land for the purchase money, and holds the legal title as a security for the enforcement of his lien.

IDEM—ENFORCEMENT OF.—A failure on the part of the vendee to pay the purchase money for two years and more, does not forfeit his right under the contract, as the vendor may proceed to enforce the payment of the debt, at any time after it becomes due.

VENDEE—RIGHTS OF ON SALE BY VENDOR.—When the vendor, under a power of sale, reserved in such a contract, sells the property either at public or private sale, the surplus, beyond the purchase money due, belongs to the vendee, and the payment of it may be decreed by judgment of the Court against the vendor.

APPEAL from the Superior Court of the City of San Francisco.

In this case, the plaintiff, John C. Gouldin, filed his complaint in the said Court, on the 30th day of June, 1853,

---

[1] Commented on in *Ellis* v. *Jeans*, 7 Cal. 415; *Hill* v. *Grigsby*, 32 Cal. 59. See *Truebody* v. *Jacobson*, 2 Cal. 269; *Taylor* v. *McKinney*, 20 Cal. 618; *Baum* v. *Grigsby*, 21 Cal. 177; *Willis* v. *Wozencraft*, 22 Cal. 617. See 5 Or. 239.

against Benjamin R. Buckelew, Junius B. Booth, [108] vendee of said Bucke-*lew, John H. Craigmiles and others, judgment creditors of the said Buckelew, alleging that, on the 2d day of August, 1850, he purchased of the defendant Buckelew, a lot of ground in the City of San Francisco, for the sum of $200, paid him $52 50 cash on account, and at the same time, executed to him his three several notes in the same amount, payable in thirty, sixty and ninety days thereafter; that the said Buckelew, at the same time, executed and delivered to him his bond in the sum of $210, conditioned, after reciting the terms of the purchase, that if the said Gouldin should pay, or cause to be paid, to the said Buckelew or assigns, at the time when these notes respectively became due, the said sums af money, etc., the said Buckelew should convey, or cause to be conveyed, to the said Gouldin or assigns, the said lot of land, by good and sufficient deed, with covenant of warranty against all incumbrances, then that the obligation should be void, etc.; that in the said instrument it was further provided, that in case any one of the said notes should remain unpaid after the same has become due, the said Buckelew reserved to himself the right to again expose the said property at public sale, after ten days' public notice, on account of the above purchaser, subject to the amount due the said Buckelew and costs and expenses, and that the said instrument was, at the same time, acknowledged by the said Buckelew, and afterwards, on the 21st day of May, 1853, duly recorded in the Recorder's office of the County of San Francisco; that the said Buckelew never presented the said notes for payment, and that they are still unpaid; that since the 2d day of July, 1851, there have been unsatisfied judgments against the said Buckelew on the records of the county, which are liens on the real estate of the said Buckelew in the said county, whereby the said Buckelew was unable to convey a good title, free of incumbrances, to the said plaintiff; that, on the 25th day of May, 1853, the said Buckelew, after some previous conversation with plaintiff, in which he endeavored to induce him to surrender his claim to the said lot, sold it to the defendant Booth, for $1000;

that the said defendant Booth did not purchase at a public sale, after ten days' notice, nor was the said sale on account of the said plaintiff; that said Booth had con-
* structive notice of plaintiff's title; that the said   [109]
sale does not bind plaintiff, and, after tendering the
sum of $250, brought into Court, to be paid thereout to the said Buckelew, or whoever may be entitled thereto, the amount of the said notes and interest, and taxes, and whatever sum he is liable to pay, the said plaintiff prayed that the said defendants may severally answer, etc.; that the Court will direct an account to be taken of the amount due on said notes, etc.; that the said Buckelew or Booth be compelled to convey said land to plaintiff; that the judgment creditors of Buckelew be enjoined from enforcing their liens against the same; that the amount of money found to be due from said plaintiff be ordered to be paid to whoever is entitled thereto, or that, if a conveyance of the said land cannot be decreed to plaintiff, that an account be taken of the amount of the excess of the purchase money upon the sale to Booth, over and above the amount due from plaintiff; that the excess be decreed to be paid to plaintiff by whoever is liable therefor; that the amount deposited in Court by plaintiff be returned to him, and that he have such other and further relief as equity and good conscience, and the nature and circumstances of the case require, etc.

The defendant Booth filed his answer, alleging his purchase of the property from Buckelew for $1000, in good faith; that since his purchase, he had made improvements thereon, to the amount of $1666, and that the plaintiff had no right or title to the property.

The defendant Buckelew at first demurred to the plaintiff's complaint. The demurrer was overruled. He then filed an answer, admitting, substantially all the facts charged in the complaint, but denying every allegation of fraud, and insisting that he was not in any manner liable to the plaintiff on said contract set forth in said complaint; but that plaintiff by his own long continued gross neglect to comply with the terms of contract, on his part, had forfeited all right to make any claim upon it.

When this case was called for trial, on the 7th of October, 1853 (the counsel for defendant Booth consenting), the Court, on motion of plaintiff's counsel, upon the [110] complaint and an-* swer, without other evidence, ordered that the cause be referred to Wm. H. Sharp, Esq., to ascertain the amounts due on the notes specified in the complaint, and also the taxes paid on the premises since the execution of the agreement, and that, upon the coming in of the report of the referee, judgment be entered up against the defendant Buckelew, in favor of the plaintiff for one thousand dollars, less the amount due on said notes and taxes, and also for costs, and that, as to the said defendant Booth, the action be dismissed without costs.

On the 27th of October, 1853, the referee reported the sum of $238 37 as being due by plaintiff under the order; on the 18th of November, 1853, on motion of plaintiff's counsel, the Court confirmed the report of the referee, and, without further evidence, entered a final decree, dismissing the said suit, as to the defendant Booth, without costs, and against Buckelew, for the sum of $761 63, and $237 50, costs of suit.

From this decree of the Court Buckelew appealed, assigning as error, 1st, That the Court erred in overruling said demurrer. 2d, That the order of October 7th, 1853, and submission to reference, were without defendant's consent, and without authority of law. 3d, That the final judgment is erroneous, because it does not appear that a jury trial had been waived; also, for want of evidence to sustain it, and for want of any finding of facts, either by the referee or the Court, to justify it.

*Halleck, Peachy, Billings & Park*, for Appellant.

A party seeking a specific performance of a contract, must show a willingness to perform his part of the contract, and a reasonable excuse for not so doing, otherwise he will be treated as guilty of gross neglect, and not entitled to relief. (2 Story's Eq. § 771, 776; 1 Johns. Ch. 375; 6 Whar. 528; 16 Maine, 92; 2 McLean, 562; *Cooper* v. *Brown*, 2 Lead Ca

in Eq. pt. 2d, p. 30.)   2d.   The plaintiff's excuses for not complying are frivolous and insufficient.   The liens did not commence until eight months after the plaintiff's default in making payment; but, even if they had existed before, plaintiff should have made an offer to pay, etc.   (2 Wend. 532, 534.)   3d.   The * order of October 7th,   [111] 1853, was without authority of law.   (Pr. Act, § 183, also 182; also the final judgment, Ib. 179, 180.)

*Wells, Haight & Gray,* for Respondent.

1st.   The notes, being commercial paper, were payable on presentment; they were never presented for payment; defendant hereby acquiesced in the delay; the delay was further excused by the incumbrances.

2d.   The provision that the sale was to be on account of the plaintiff, shows that all subsequent changes in value were to be for his profit or loss.   The case of *McKay* v. *Carrington,* 1 McLean, 54, 56, is a case in point.

3d.   There was no error in the order of October 7th, or the judgment of November 18th, 1853.   (Practice Act, § 183, 2d subdivision.)   The presumption from the record is, that the defendant, whether present or absent, waived a trial by jury.   (Practice Act, § 179.)

Mr. Justice HEYDENFELDT delivered the opinion of the Court.   Mr. Ch. J. MURRAY concurred.

This case may be determined by a simple solution of the question—What was the vendor's relation to the land after his sale?   According to sound principles of equity, sustained by a long current of decisions, he was the vendor with an equitable lien upon the land for the purchase money, and holding the legal title as a security for the enforcement of his lien.   (See the case of *Haley* v. *Bennett,* 5 Port. 469, where the question is fully examined; also, *Chapman* v. *Chunn,* 5 Ala. 397.)

The vendor in this case had severrl remedies:   He might have recovered possession of the premises, in which case,

he could only have held until the rents and profits had paid the purchase money, and then equity would have compelled him to convey to the purchaser.

He might have enforced his lien in a court of equity, and obtained a decree to sell the land, in which case, if the sale had produced more than the purchase money, the surplus would belong to the vendee.

But, under the contract, he had the power of sell-
[112]    ing, without *the interposition of judicial authority, and having selected this mode as most convenient, can it be reasonably contended that it gives him any greater rights, than if his lien had been enforced by a court of equity?

It is urged, however, that he did not pursue the plan of sale agreed on in the bond; that, instead of selling at public sale, after advertisement, he treated the contract as a nullity, and sold at private sale. This is certainly an argument against him. The vendee might very well complain of this proceeding as a breach of contract, and might recover for such breach, if he could affirmativey show that the land would have sold for a greater sum, if the mode of selling pointed out by the written obligation had been pursued.

The argument that the length of time which elapsed without payment of the purchase money demands the inference that the contract had been abandoned, is of no force. It was within the power of the vendor to have rendered the time as short as he chose, by a prompt enforcement of his lien.

The decree is affirmed.