JOSEPH KNOTT, RESPONDENT, *v.* JAMES B. AND ELIZ-
ABETH STEPHENS, APPELLANTS.

A SUIT BY ONE OBLIGEE IS NOT A BAR TO A SUBSEQUENT SUIT TO ENFORCE
THE RIGHTS OF BOTH OBLIGEES.—A suit brought by the assignee of one
of two obligees, in a bond for the conveyance of real estate, is not a bar
to a subsequent suit for specific performance between the same parties,
and concerning the same land, commenced after the plaintiff in the
former suit had acquired the interest in the land of both obligees in the
bond.

TIME—ESSENCE OF CONTRACT, WHEN.—Time is not of the essence of a con-
tract to convey land at a future day, unless the language of the con-
tract clearly indicates that it was so intended by the parties.

IDEM.—Where, by the terms of the contract, time is not made material,
either party may enforce performance by executing, or tendering the
execution of the contract on his part, and demanding the same of the
opposite party.

APPEAL from Multnomah County.

On the 10th day of March, 1866, the defendant, James
B. Stephens, contracted with Joseph Long and William
Foster to sell them block No. 23, in the city of East Port-
land, for the agreed price of six hundred dollars in coin, of
which sum one hundred dollars was then paid; and said
Long and Foster executed and delivered to said Stephens
their joint and several promissory note for the payment of
the remaining five hundred dollars two years after date,
with interest at one per cent. per month.

On the same day (March 10, 1866), James B. and his
wife, Elizabeth Stephens, executed and delivered to said
Long and Foster, a bond for a deed to said block No. 23,
in the penal sum of five hundred dollars, the conditions of
which read as follows: "Now, therefore, on the payment of
said note ($500), the said James B. and Elizabeth Ste-
phens, their heirs, executors or administrators, are to
make, execute and deliver, or cause to be, a good and suffi-
cient warranty deed, in fee-simple, to the following de-
scribed * * * real estate * * * to wit, block No.
23, in the city of East Portland, in Multnomah County,
Oregon." By the terms of this bond the obligors therein

reserve to themselves any ferry rights or franchises which now, or in the future, may appertain to said block.

On the 12th day of March, 1867, sixty dollars, or one year's interest, was paid on said note. In the fall of 1867, Long died intestate. On the 28th day of June, 1870, Foster, for himself and as surviving partner of Long, deceased, undertook, for the consideration of two hundred dollars and the payment of said five hundred dollar note to Stephens, to sell and assign to said Knott all the right, title and interest of himself and Long, deceased, in and to said block No. 23, and did in that manner assign said bond to Knott. Thereupon said Knott, on the 2d day of July, 1870, offered and tendered to said James B. Stephens seven hundred and sixty dollars in coin, as the amount then due upon said note, and demanded a deed to said block, which money Stephens declined to receive, and refused to execute such deed.

On the 22d day of July, 1870, Knott commenced suit in the Circuit Court for Multnomah County against Stephens and wife, to compel the specific performance of said contract of sale by the execution of a deed to said block according to the terms of said bond. After issue joined by the pleadings and upon trial by the court, defendants obtained a decree dismissing plaintiff's cause, and for their costs and disbursements, which decree was rendered on the 13th day of February, 1871. Afterwards, in said year 1871, Wm. Foster was duly appointed as administrator of the estate of Jos. Long, deceased, by the County Court of Multnomah County, and by proceedings regularly had thereafter, sold at public auction said Long's interest in and to said block No. 23, which was purchased by Joseph Knott for two hundred and fifty dollars in coin, and a deed thereto was duly executed by said Foster, as administrator of Long's estate, and delivered to said Knott on the 13th day of May, 1872. Upon obtaining this deed, Knott made a tender of eight hundred and fifteen dollars in gold coin, as the amount then due on said five hundred dollar note, including accrued interest. Stephens refused the tender, and refused to execute a deed, claiming that the bond had been rescinded by the failure

of Foster to comply with the contract of sale on his part. Thereupon, on the 17th day of May, 1872, plaintiff commenced this suit, and prays a decree for the specific performance of said contract.

Appellants allege that Long's representative and Foster had forfeited their right to a specific performance at the time of the alleged assignment to respondent Knott, and further, that after the forfeiture of said bond by said Foster, they being ignorant of any pretended assignment of said bond to the respondent, or of any claim of Foster to said block, commenced improving the same in June, 1870, by driving piles thereon, and otherwise improving the same without objection from respondent or said Foster, until July 9, 1870, when respondent for the first time set' up claim to said block under the assignment of said bond of June 28, 1870.

Appellants also plead, in bar of respondent's right to recover in this suit, the adjudication had between the same parties and concerning the same property, in which appellants, on the 13th of February, 1871, obtained judgment against plaintiff dismissing his bill and for costs. Appellants, in their answer in this case, tender to plaintiff the one hundred and sixty dollars paid by Foster and Long on the block, with accrued interest thereon, and offer to surrender up said five hundred dollar note, and pray a decree rescinding said contract.

Respondent replying, denies substantially the new matter set up in answer.

The cause was by agreement of the parties referred to W. H. Effinger, Esq., to take and report the testimony and his findings of fact, and on the filing of his report it was stipulated that a *pro forma* decree might be entered by the court, as each party intended, in the event that the cause should be decided adversely to him or them, to appeal to this Court. Whereupon the court below decreed the relief prayed for by plaintiff, and defendants appeal.

By the Court, BONHAM, C. J. :

The determination of this cause involves the consideration of the following principal questions :

1. Is the decree of the Circuit Court, rendered February 13, 1871, in favor of the defendants and against the plaintiff, dismissing his bill, conclusive of this suit, by placing the subject-matter thereof *res judicata?*

2. In bonds or agreements for the conveyance at a future time of real estate, when is time material, or of the essence of the contract?

3. When, by the terms of a bond, time is not made of the essence of the contract, how can it be made so by the subsequent action of the parties, or either of them ?

4. When time becomes material, what steps are necessary to be taken to operate as a rescision of the contract?

The objection to plaintiff's right to maintain this suit because of the decree rendered against him February 13, 1871, we think cannot be maintained. In the suit in which that decree was rendered, although between the same parties and concerning the same property, yet it is apparent from the complaint in that case that the plaintiff was not in a condition to demand specific performance of the contract of sale, because he had then only acquired the interest of Foster in the bond of defendants by the assignment thereof of June 28, 1870. The attempt of Foster by the assignment referred to to transfer to Knott the one-half interest of his deceased partner, Long, in and to block No. 23 was a nullity; because he (Foster) had at that time no right or authority in law to so transfer the same as surviving partner of Long. Knott could in no event have compelled the execution of a deed to him until he had succeeded to the entire interest of Foster and that of the estate of Long, deceased. The interest of Long's estate in the property in question was not obtained by plaintiff until May 13, 1872, when he secured Foster's deed as administrator of the estate of Long to his (Long's) interest in the block. This was the title to the other half interest in said block No. 23, acquired after the adjudication of February 13, 1871; and Knott was

then, for the first time, in a situation, under any circumstances, to demand of Stephens and wife a deed to the premises in controversy. The subject-matter of the cause determined February 13, 1871, is not identical with that of this suit. Section 726 of the Civil Code declares, "That only is deemed to have been determined by a former judgment, decree or order which appears upon its face to have been so determined, or which was actually and necessarily included therein or necessary thereto." A person who litigates for the title to property which he does not own, is not estopped thereby from setting up an after-acquired title. (*Burt* v. *Sternburg*, 4 Cowen, 563; *New Eng. Bank* v. *Lewis*, 8 Pickering, 117; Freeman on Judgments, § 329.)

The time specified in a bond for a deed when the purchase-price is to be paid and the deed executed, is material, and must be strictly observed where, from the language employed, it is evident that it was the intention of the contracting parties to so regard it. But in order that the obligee in a bond may be justly held to have forfeited his equitable interest in the land contracted to be conveyed, on his failure to pay the purchase-price or any part thereof remaining unpaid, the conditions of the bond must clearly and unequivocally express the intention of the parties that it should so operate.

Compensation, and not forfeiture, is a favorite maxim with courts of equity; and, where the vendor, by his contract to convey, has not affirmatively expressed his intention to make the time of payment material, courts of equity will infer that it was understood that interest on the deferred payments would be a sufficient compensation for the delay. (*Smith* v. *Robinson*, 13 Ark. 533; *Moore & Cail* v. *Anders*, 14 Ark. 634; *Gouldin* v. *Buckelew*, 4 Cal. 107; Hopkins's Ch. 548; 9 Johns. 448; 1 Story's Eq. Jur., §§ 788-9.)

The conditions of the bond in this case are, that the defendants will execute a good and sufficient deed to block No. 23, on the payment by the obligees, Long and Foster, of the five hundred dollar note by them executed to James B. Stephens. No words are used to indicate an agreement or understanding that Long and Foster were to forfeit the

money already paid, or their rights under the contract, in any respect, if they should fail to make prompt payment when the note should become due. We, therefore, conclude that, by the terms of the bond in this case, time was not regarded as material; but, that the obligors (unless their relations were otherwise changed) ought to be regarded as the holders of the legal title in trust for the obligees, and as a security for the purchase-price until the same should be paid. (*Huffman* v. *Hummer*, 2 C. E. Green's N. J. Equity R. 263; *Leggett* v. *Edwards*, Hopkins's Ch. 599; *Tyree* v. *Williams*, 3 Bill. (Ky.) 367; *Andrews et al.* v. *Sullivan*, 2 Gilman, 327; *Quinn* v. *Roath*, 37 Conn. 16.)

In *Huffman* v. *Hummer*, above cited, the Chancellor says: "As a general rule in equity, time is not deemed to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract. And one of the most frequent occasions on which courts of equity are asked to decree the specific performance of contracts is, where the terms for the performance and completion of the contract have not, in point of time, been strictly complied with." (1 Story's Eq. Jur., § 776.)

Regarding the bond in this case, then, as not providing by its terms that time is of the essence of the contract, the next question is, did the circumstances of the transaction, or the subsequent action of the contracting parties, cause it to become so? The block of land in question was, at the date of the execution of the bond to convey the same, vacant and unimproved, and no actual pedal possession of the same as a distinctive block was had until June, 1870, when Stephens, assuming that the bond had been forfeited by the failure of Foster, the surviving obligee, to pay the balance of the purchase-price thereof, took possession of the same and commenced driving piles and preparing to build thereon. Until this time there was nothing in the situation of the premises to indicate that the purchasers would be expected to be more prompt in the fulfillment of their engagements than would ordinarily be expected in cases of the sale

of vacant lands, where time was not made material by the terms of the contract.

If a person in the actual occupancy of lands which it was necessary for him to use and improve, either for purposes of agriculture, or for trade and commerce, should contract to convey the same, at a future day, on the payment of the purchase-price, the situation of the owner of the premises might be such as to indicate that his interests would demand prompt compliance with the terms of the contract on the part of the purchaser. In such case, the situation of the owner of the land, and the purpose for which the same was being used at the time of the contract to sell, would be circumstances to indicate that time was regarded as material on account of the damage which might result to the owner in the event of delay in the full consummation of the agreement. But the pleadings and proofs in this case do not show such a state of facts.

In this case, then, although time is not made of the essence of the contract, either by the terms of the bond or by the situation of the parties to the premises in controversy, yet defendants, if they had chosen, might have made it become so by demanding payment of the balance of the purchase-price, and by tendering a deed to the premises and notifying the obligees, or their legal representatives, that the contract would be regarded as rescinded, unless it was executed by them within a reasonable time. But before a rescision of the contract could be insisted upon by the obligors in the bond, they should have tendered back the money already paid by Foster and Long, with legal accrued interest thereon, and offered to deliver up the five hundred dollar note which they held against them, and thereby place them *statu quo?*

In this case we think, as the referee found, the fact to be that Stephens did once, and perhaps twice, demand payment of the note from Foster shortly after the same became due in March, 1868, but nothing more. There is no pretense on the part of defendants that they or either of them ever tendered back the one hundred and sixty dollars paid on the land, or that they offered to surrender up the note in

question until after the commencement of this suit.   It is true that defendants aver in their answer that at divers times during the year 1869 they offered to execute the deed called for in the bond, and notified Foster, the surviving obligee, that they would rescind said contract to convey unless he paid the note in question.   But plaintiff denies this in his replication, and upon the proofs the case stands upon the oath of Stephens opposed by that of Foster, and regarding each witness as standing equally fair in point of veracity, the fact must be found against the defendants.

Either party in this case, upon his own motion, might have caused the time of performance of the contract to become material, by executing or tendering an execution of the contract on his part, and by demanding the same of the opposite party.   But it comes too late for the defendants, *in order to demand a rescision of this contract, to tender* back for the first time, after the commencement of this suit, the five hundred dollar note, and the one hundred and sixty dollars with interest which had been paid upon the land.

We conclude, in view of all the facts in this case, that the defendants ought in equity to be compensated for the improvements which they placed upon the block of land in controversy in June, 1870, which we find from the evidence were of the value of four hundred dollars, in gold coin; and that a decree of specific performance should be awarded on the payment of that sum, in addition to the balance of the purchase-price tendered by plaintiff and on deposit in court.

Plaintiff having accepted the condition on which the decree for specific performance was awarded by the court by the payment of said sum of four hundred dollars, the decree of the court below is modified accordingly.