## McClellan vs. Scott and others.

*Fraudulent misrepresentations— Rights of purchaser under judgment against fraudulent grantee — Possession as notice of plaintiff's rights.*

1. Fraudulent representations by a railroad company, through its officers or agents, as to its pecuniary condition, are ground for avoiding a contract of sale of land obtained thereby.
2. Where, in such a case, a certain harbor and depot property of the company in a city of this state was represented as worth three times its actual value: *Held,* that this must be treated, not as a mere matter of opinion, but as a fraudulent misrepresentation.
3. One who purchased the land at a sale on a judgment against the company, while it was in plaintiff's possession, took subject to his rights as against the company.
4. Such purchaser could not object to plaintiff's right to rescind the contract of sale because he had sold the stock received from the company for the land, and had never offered to return it, the company itself having reconveyed the land to him without taking that objection.

APPEAL from the Circuit Court for *Kenosha* County.

Action (commenced in 1864) to restrain the defendant *Fox*, as sheriff of said county, from issuing a deed for certain land sold on a judgment against the Kenosha & Rockford Railroad Company, to annul the sale and certificate, and to have a conveyance of said land, previously executed by the plaintiff to said railroad company, adjudged to be void. The facts found by the circuit court were as follows: In June, 1857, plaintiff sold and conveyed the land to said railroad company, receiving therefor certificates of the capital stock of said company to the amount of $2,700. To induce plaintiff to purchase said stock and make said conveyance, one Bond, then

president and agent of the company, represented to him that the company was out of debt; that it owned six acres of land in or near the city of Kenosha, for depot purposes, and certain harbor property in that city (stating the quantity thereof), together with a large amount of other property; that such depot and harbor property was worth $90,000, and was free from incumbrance; and that the city of Kenosha and the company had furnished all the means which had then been used in the construction of the railroad. Plaintiff relied upon these representations, and believed them to be true, when he conveyed the land. The company, however, was not out of debt, nor the property free from incumbrance, at that time; but the company was indebted to the city of Kenosha in the sum of $150,000 for the bonds of said city issued by authority of law in aid of the company, and this indebtedness was secured by a mortgage on a portion of said property, which was then of record in the office of the register of deeds of said county; and Bond and the company well knew these facts. Moreover, said depot and harbor property was not then worth over $30,000, and the company had executed a mortgage on all its property to one Yelverton, as trustee, to secure the payment of its bonds to the amount of $480,000, thereafter to be issued, which mortgage was also of record in said register's office; but it does not appear whether any of these bonds had, at that time, been issued or negotiated. After the purchase, the company took possession of the land, and cut off the timber, but before May 21, 1859, plaintiff resumed the possession, which he has ever since retained. A judgment in favor of the defendant *Scott* against said railroad company, for over $1,000, was docketed May 21, 1859, and, shortly after, was sold and assigned to the defendant *Pricture*. In 1862, the land in question was sold, under this judgment, to *Pricture;* but, at the time and place of the sale, plaintiff, in the presence and hearing of the sheriff

McClellan vs. Scott and others.

and of said *Pricture*, forbade the sale, stating that the deed of said land was obtained from him by the railroad company under false representations, and that it was void. In September, 1860, the Kenosha, Rockford & Rock Island Railroad Company (which is the successor of the Kenosha & Rockford Railroad Company) reconveyed the premises to plaintiff by a quitclaim deed, and, so far as appears, without any consideration. Plaintiff has sold the railroad stock which he received as aforesaid from the company in payment for said lands, to some third person for a nominal price; and it does not appear that he has ever offered to transfer the same to the company, or to surrender his certificates therefor to be canceled. Plaintiff was in the city of Kenosha when he delivered the deed of said land to the company in 1857; "and had he, when there, and before delivering the deed, used reasonable and ordinary diligence and prudence, he would have learned of the existence, nature and extent of the indebtedness of said company, and the incumbrances upon its property, and the true value of the depot and harbor property." On these facts, the court dismissed the complaint; and the plaintiff appealed.

*Bennett & McClellan*, for appellant.

*O. S. & F. H. Head*, for respondents:

1. The representations in this case were not such as to entitle plaintiff to the relief demanded. (*a*) There was no misrepresentation of the *amount* of property owned by the railroad company; and those made as to its *value* are mere expressions of opinion, upon which no purchaser is warranted in relying. 2 Parsons on Con. 275, note k; Chitty on Con. 528; 1 Story's Eq. Jur. § 197. (*b*) The declaration that the company was out of debt, and its property free from incumbrance, was qualified by another statement, which should have put plaintiff on inquiry, to wit: that the city of Kenosha and the company had, up to that time, furnished all the capital. This was an admission of the bonded debt to the

city, because the city could subscribe to the stock of this company only under chapter 105, Local Laws of 1853, of which act plaintiff was bound to take notice as a public act (*Clark v. City of Janesville*, 10 Wis. 136), even though it was published among the private laws (*In re Boyle*, 9 Wis. 264); and the act required the city to secure itself by mortgage for any loans made. 2. Plaintiff is too late to rescind this contract, after having delayed seven years. (*a*) One who would rescind for fraud must proceed at once on discovering the fraud; and any delay, especially if injurious to the other party, is a waiver. 2 Parsons on Con. 279; *Campbell v. Fleming*, 1 Ad. & E. 40; *Masson v. Bovet*, 1 Denio, 74. (*b*) Plaintiff having sold the stock which he received in consideration of the deed, could not put the parties *in statu quo*, which is indispensable in every case of rescission. *Hunt v. Silk*, 5 East, 452; 2 Parsons on Con. 278, 279; Chitty on Con. 574; *Masson v. Bovet*, 1 Denio, 74; *Weed v. Page*, 7 Wis. 503, and cases cited; *Utter v. Stuart*, 30 Barb. 20; 11 How. Pr. 526; 4 Mass. 502; 15 id. 319; 3 Johns. 23; 17 id. 437. (*c*) Where one of two innocent persons must suffer by the fraud of a third person, he who trusted such third person, and enabled him to commit the act, must bear the loss. *Lickbarrow v. Mason*, 2 Term, 70; 1 Story's Eq. Jur. § 387. (*d*) The declaration of plaintiff, at the judgment sale to *Pricture* (if made), that "the deed was obtained by false representations," was no notice of any valid equities, because it is not enough that the representations were *false*. 1 Story's Eq. Jur. § 191 *et seq.* It was not competent to put him on inquiry, because it designated no place where, nor means by which, the necessary facts could be ascertained. 4 Kent, 178.

COLE, J. The circuit court, in effect, found, as matters of fact, that the agents and officers of the railroad company made certain material false and fraudulent repre-

sentations to the plaintiff concerning the financial condition of the company, the value of its property, etc., to induce him to execute the conveyance to the company; and that the plaintiff relied upon these representations, and believed them to be true, when he conveyed his land to the company and received its capital stock in payment therefor. That these facts are fully and abundantly established by the evidence, no one can doubt, after examining the proofs in the cause. Instead of the company being out of debt, as represented by its agent and president, the corporation had incurred debts to a large amount, and such indebtedness was secured by mortgages upon a portion of its property; while its harbor and depot property, in and near the city of Kenosha, was not worth a quarter, or, at most, not more than a third, of the value the agents of the company represented it to be. The circuit judge, in his opinion filed in this case, seems to think that the representations of the agents of the company, in regard to the value of the harbor and depot property, are not in the nature of statements of fact, but were mere matters of opinion; and that, when they had correctly informed the plaintiff where the property was situated, its quantity, etc., then he could have judged of its value for himself, and had no right to rely upon the estimate of others. It is very true, the law discriminates between a mere expression of opinion and the statement of a fact upon which a party has a right to rely. But, in this case, we think, the representation in regard to the value of the harbor and depot property was something more than what is understood as an expression of opinion about the value of property. It was made by the president of the company at a public meeting, when making statements about the financial condition of the corporation, which he intended others should act upon. He was anxious to procure subscriptions to the stock of the company, and he well knew that any statements made by him about the prop-

erty and pecuniary condition of the corporation would influence the conduct of those about to take stock, and that they would not be likely to investigate the affairs of the corporation, in order to verify the truth of his representations. Besides, all these matters were peculiarly within the knowledge of the officers of the company; while it does not appear that the plaintiff had any particular knowledge of the condition of this harbor and depot property. It seems to us entirely reasonable that the plaintiff should rely upon this representation in regard to the value of that property, as well as the other statements made by the president, and that, under the circumstances, he was fully justified in relying upon them in exchanging his land for the stock of the company.

While the circuit court found that the representations made by the agents of the company, to the effect that the company was not in debt, and that its property was unincumbered, were untrue, and known to be so when made; still, since it appeared that such agents further stated that the company, or stockholders, and the city of Kenosha, had furnished all the means that had been expended for the construction of the road, and as the city could only subscribe for stock in the manner authorized by chapter 105, Laws of 1853, which required the company to execute a mortgage upon its road to secure the payment of any bonds which the city might issue, therefore the court held that the plaintiff was chargeable with constructive notice of the provisions of the law under which the means were furnished by the city, and that, by the use of reasonable and ordinary diligence, he could have learned of the nature and extent of the indebtedness of the company, and of the existence of all incumbrances; and that, by omitting to make inquiries as to the truth of the matters stated by the agents of the company, he was guilty of negligence, and cannot now claim the relief demanded in the com-

plaint. In answer, however, to this view of the circuit court, we say, in the language of PORTER, J., as employed by him in *Mead v. Bunn*, 32 N. Y. 275–280: "Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith." See, also, *Directors, etc., Central R. R. Co. v. Kisch*, 2 House of Lords Appeal Cases, 99–120. Here the agents of the company made express statements of existing facts in respect to the indebtedness of the company, and that its property was unincumbered. It is not for one whose equities in the land in controversy are no stronger than would be those of the company, to object that the plaintiff was put upon inquiry, and should not have relied upon these deliberate and express representations of the officers of the company.

Further, it is said, it is too late for the plaintiff to rescind the contract and take advantage of the fraud practiced upon him, after having delayed his action for seven years. It is a sufficient answer to this objection to say, that it appears the company reconveyed the land to the plaintiff in September, 1860. In this connection, I may allude also to another circumstance, which, it is insisted, has an important bearing upon the right of the plaintiff to have the relief he seeks. It is this: It appears that the plaintiff has sold the stock of the company which he received in payment of his land; and it does not appear that he ever offered to transfer the same to the railroad company. But it is, manifestly, not for the purchaser at the sheriff's sale to object that this stock has not been returned to the company, and that, consequently, there could be no rescission of the contract. The company was the only party interested in having

the stock returned ; and if it saw fit to reconvey the land to the plaintiff, without the return of the stock, it is not for the purchaser at the sheriff's sale to object.

Again, is there any ground for saying that the purchaser of the Scott judgment, and of the land at the execution sale, was an innocent purchaser in good faith, and, as such, entitled to protection against the equities of the plaintiff in the premises ? It appears to us not. This judgment was obtained by Scott against the railroad company on the 21st of May, 1859, and, on the 29th of the same month, sold and assigned to Pricture. But although, at this time, the title of record appeared to be in the company, still the plaintiff was then in possession of the premises, and has remained in possession ever since. The plaintiff likewise testified that he was present at the sale upon the execution, and forbade the sale in the presence of the sheriff and the purchaser, telling them that the deed was obtained by the company by false representations. The sheriff corroborates the plaintiff upon the point that the latter was present at the sale, and forbade the same. Under these circumstances, there is no ground for saying that Pricture purchased without notice of the plaintiff's equities. He was affected with notice that the plaintiff was in possession of the premises, even if the sale was not actually forbidden in his presence. He, therefore, has no right to protection against equities binding upon the debtor company, of which he had notice at the time of purchase.

It follows, from these views, that the plaintiff is entitled to the relief demanded in the complaint.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded, with directions to grant such relief.