## SMITH v. COLUMBUS BUGGY CO., et al.

No. 2260.   Decided April 17, 1912 (123 Pac. 580).

1. TRIAL—MOTION FOR NONSUIT. In passing on a motion for nonsuit, plaintiff's evidence, together with all legitimate inferences therefrom, are to be taken as true.   (Page 585.)

2. SALES—REMEDIES OF PURCHASE—RESCISSION—ACTIONS—SUFFICIENCY OF EVIDENCE. Evidence, in an action by the purchaser

of an automobile to rescind a contract for misrepresentation, *held* to sustain a finding that the title to the machine was in defendant wagon company at the time of the sale to plaintiff. (Page 586.)

3. CONTRACTS — RESCISSION — MISREPRESENTATIONS — KNOWLEDGE OF FALSITY. In order to rescind a contract for misrepresentations, it is not essential that the other party making the representations knew that they were false, if they were in fact false and material, and the rescinding party had a right to rely thereon, and did so. (Page 594.)

4. APPEAL AND ERROR—HARMLESS ERROR—VERDICT. Where, in an action against three defendants to rescind the sale of an automobile, the jury were justified in finding that defendant wagon company alone made the contract of sale, and it appeared that the jury intended to render a verdict against it alone, failure to find in favor of the other two defendants did not prejudice such defendant, merely amounting to an implied finding in favor of them, or a dismissal as to them. (Page 594.)

5. TORTS—JOINT TORT-FEASORS. As a rule, all persons who take part in committing an actionable fraud are joint tort-feasors. (Page 595.)

6. TRIAL—SUBMITTING ISSUES. Where all of the facts relating to plaintiff's right of recovery were denied in the answer, it was not reversible error for the court to copy the complaint and such parts of the answer as raised the issues in the case in submitting the case to the jury; it not appearing that the jury were misled thereby as to the issues in the case.[1] (Page 596.)

7. SALES—RESCISSION BY BUYER—TIME OF RESCISSION. While the buyer need not rescind the sale immediately upon discovering grounds therefor, he must rescind within a reasonable time after discovering the facts justifying rescission; what is a reasonable time depending upon the particular circumstances. (Page 597.)

8. SALES—RESCISSION—JURY QUESTION. Whether a buyer's right to rescind a sale was exercised within a reasonable time is usually, though not always, a jury question, but may be a question of law. (Page 597.)

9. SALES—RESCISSION—TIME. The time within which a sale can be rescinded for fraud begins from the time of the discovery of the fraud, and not from the date of sale. (Page 597.)

---

[1] Pulos v. D. & R. G. W. Ry. Co., 37 Utah, 238, 107 Pac. 241.

10. TRIAL—INSTRUCTIONS—EXCEPTIONS. Exceptions to the separate
paragraphs of the instructions *in solido* are not available
unless the paragraphs to which the exceptions are taken are
bad as a whole.[2]  (Page 598.)

11. TRIAL—INSTRUCTIONS—REPETITION. It was not necessary, in a
buyer's action to rescind a sale for false representations, to
repeat a charge in every instruction that the false representa-
tions must have related to a material fact.  (Page 599.)

APPEAL from District Court, Third District; *Hon. Geo.
G. Armstrong,* Judge.

Action by M. E. Smith against the Columbus Buggy Com-
pany, the Consolidated Wagon & Machine Company, and
another.

Judgment for plaintiff against the Consolidated Wagon &
Machine Company, and it appeals.

AFFIRMED.

*Moyle & Van Cott* and *Gustin, Gillette, Davis & Brayton*
for appellant.

*Stephens, Smith & Porter* and *Dey & Hoppaugh* for re-
spondent.

FRICK, C. J.

In February, 1909, the respondent commenced this action
against the defendants Columbus Buggy Company, a cor-
poration of Columbus, Ohio, and Samuel Davidson for an in-
formal rescission of a sale of an electric automobile, alleged
to have been made by them to her.  The action was grounded
upon false representations and fraud.  On April 1, 1909,
after discovering that the Consolidated Wagon & Machine
Company, a corporation of the State of Utah, hereinafter
styled appellant, made, or was interested in making, the

---

[2] Farnsworth v. U. P. Coal Co., 32 Utah, 112, 89 Pac. 74; Ryan v.
Curlew Irr. & Res. Co., 36 Utah, 393, 104 Pac. 218.

said sale, respondent asked that it be made a party to the action, which was accordingly done. In making appellant a party, respondent filed what in the record is called an "amended and supplemental complaint" against the defendants first mentioned, and also against appellant. The allegations in said complaint, so far as material here, are, in substance, as follows:

That on the 1st day of April, 1908, at Salt Lake City, Utah, the respondent purchased from said defendants a certain electric automobile, manufactured by the defendant Columbus Buggy Company, for which respondent paid said defendants, at the time aforesaid, the sum of $1650; that before making the sale of said automobile "said defendants falsely and fraudulently represented to the plaintiff, well knowing that said representations were false and fraudulent, and for the purpose of deceiving the plaintiff and inducing her to buy said automobile, that the same was new and in a new condition; that the plaintiff, relying upon said statements and believing them to be true, purchased said automobile and paid the defendants the sum of $1650 therefor; that said statements were false and fraudulent, and well know by said defendants and each of them to be false and fraudulent, in this: That said automobile was not new in a new condition, but that one of the trays of batteries from which is generated the power to propel said automobile was old and secondhand, and the same was not new or in a new condition, by reason of which the power that said car should have had was materially reduced and impaired." It is further alleged that upon discovering the condition of said automobile and the falsity of the representations aforesaid respondent rescinded said sale, tendered back said automobile to said defendants, and demanded from them the return of the amount paid to them therefor. The respondent then proceeds to set forth that appellant was not made a party to the action at its inception, because its officers and agents had falsely informed the respondent that the automobile in question was the sole property of the defendant Columbus Buggy Company, and that the sale was made in its behalf, and that

appellant was not the owner of said automobile and had no interest therein; but respondent alleges that appellant "was, at the time of the sale, the owner of an interest in said car, the exact nature of which this plaintiff is unable to state, but that the sale of said car was made to the plaintiff by said defendants, and in their interest and for their benefit and profit." Respondent also alleged that, before making appellant a party to this action, she also tendered back to it said automobile, and demanded the return of the amount paid therefor from it. Upon substantially these allegations, respondent prayed judgment against all of the defendants for the sum of $1650, with interest from February 1, 1909.

The appellant and each of the other defendants filed separate answers. Barring the plea that respondent was estopped or had waived her right to rescind the sale, appellant could have proved all of the averments contained in its answer under a general denial. For the purposes of this decision, therefore, we shall treat appellant's answer as denying all of the material allegations of respondent's complaint. The same may be said with regard to both of the answers of the other two defendants.

Upon the foregoing issues, a trial to a jury resulted in a verdict in favor of respondent and against the appellant only. The court entered judgment upon the verdict, denied a motion for a new trial, and appellant prosecutes this appeal to reverse said judgment.

The alleged errors are very numerous, consisting of no less than seventy-five separate assignments, all of which are relied on. One of the principal assignments relates to the overruling of appellant's motion for a nonsuit. When respondent rested, appellant moved for a nonsuit upon the grounds: (1) Because the evidence showed that the sale was made by the defendant Davidson, and there is no proof that said Davidson was the agent of or connected with or acted for or on behalf of appellant in making said sale; (2) because there is no proof of any false representations nor of any fraud nor falsity on the part of any one; and (3) because the proof is to the effect that respondent did not rescind

within a reasonable time after discovering the alleged defects in the automobile, assuming the evidence adduced in her behalf to be true.

Nearly all of the evidence, with the exceptions hereinafter noted, was indirect or inferential, the inferences being, however, conflicting. Respondent's evidence, therefore, is of that character which it was proper to submit to the jury, for the purpose of permitting them to pass upon the inferences that should be deduced from certain facts, and to determine the weight or effect that should be given to such inferences. In that respect, the evidence presents a case which is peculiarly for the jury to pass on. Under the peculiar circumstances of this case, we cannot set forth the evidence, even in condensed form, without extending the length of this opinion beyond all practical limits. Such portions of the evidence, therefore, as are deemed essential to a full understanding of the points decided we shall refer to in the course of the opinion.

In passing upon the motion for a nonsuit, it must therefore suffice to say that, in view that all of respondent's evidence, together with all of the legitimate inferences that can be deduced therefrom, was, for the purposes of the motion, conceded to be true, there was, in our judgment, sufficient evidence in support of every essential allegation to take the case to the jury. The court therefore did not err in overruling the motion for a nonsuit.

After the motion for a nonsuit had been disposed of, appellant and the other two defendants introduced their evidence; and after the evidence, direct and in rebuttal, was all in, appellant requested the court to direct the jury to return a verdict in its favor. It is contended that, notwithstanding the fact that the court had denied appellant's motion for a nonsuit, this request should nevertheless have been granted, and that it was error to refuse it. This contention, in effect, is based upon the theory that in interposing the motion for a nonsuit appellant, by force of law, was compelled to admit that all of the respondent's evidence, as well as the legitimate inferences that might be deduced therefrom, was true, but that such, under the circumstances of this case, was

not the precise effect of the request for a directed verdict. This is so, it is contended, for the reason that many, if not all, of the inferences that could have been deduced from certain facts testified to on behalf of respondent were entirely met and overthrown by the positive and uncontradicted testimony of appellant's witnesses; and thus, it is contended, the evidence in support of respondent's contentions was not the same when the request to direct a verdict was made as it was when the motion for a nonsuit was interposed. In this regard, much stress is laid by appellant's counsel upon the assertion that there is no evidence upon which the jury could base a finding that appellant had any interest in the automobile in question, or that it was in any way responsible for any representations that may have been made by the defendant Davidson in making the sale to respondent's agent Mr. Smith.

It seems to us, however, that when appellant closed its case the evidence that the title to the car in question was in it was most persuasive, if not conclusive. The evidence upon this point, briefly stated, is this:

In the spring of 1907, appellant ordered from the defendant Columbus Buggy Company four electric automobiles of a particular style. In placing the order, appellant's general manager, Mr. Odell, informed said company that he desired a car for his own use, and for that reason requested a special or additional discount on such car from the usual discount. The defendant Columbus Buggy Company accepted the order and granted the special discount, as appears from the invoice hereafter referred to. Immediately upon receiving and accepting the order from appellant, said company proceeded to assemble four cars of the style and design ordered, and prepared them for shipment. When the cars were ready for shipment, they were loaded into a flat car, and were duly billed to appellant at Salt Lake City, Utah; a sight draft for the purchase price of the four cars accompanying the bill of lading. The invoice forwarded to appellant, showing the discounts, as aforesaid, reads as follows:

The Columbus Buggy Company,
Columbus, Ohio, May 27, 1907.
Sold to Consolidated Wagon & Machine Co., Salt Lake
City, Utah.
Terms:   C. O. D.

| T'kt No. | Quan. | Style. | Tr'k & Axle. | | Tr'mng | | P't No. | Amount |
|---|---|---|---|---|---|---|---|---|
| 386 | 1 | 1001 | Vict. Top | Blue Clo. | | | Blue | $1650 00 |
| 387 | 1 | 1001 | " | " | " | " | " | 1650 00 |
| 388 | 1 | 1001 | " | " | Mar | " | 82 | 1650 00 |
| 389 | 1 | 1001 | " | " | " | " | 82 | 1650 00 |

|  |  |
|---|---|
|  | $6600 00 |
| Less 20% ........................................................................ $1320 00 |  |
| 5% extra on No. 386 acct. for own use ........................ 66 00 | 1386 00 |
|  | $5214 00 |

After the cars had been shipped, and while in transit from
Columbus, Ohio, to Salt Lake City, appellant, without cause,
and without consulting said company, notified it that it
would not receive nor pay for more than two of the four cars
ordered. The cars were therefore stopped while in transit at
Julesburg, Colo., until the parties could adjust their differ-
ences. The parties afterwards did meet; and it was agreed
that appellant should pay in cash for two of the cars, and
the other two should be received by it on what is termed a
special consignment, to be paid for when sold. The cars
were then forwarded to appellant at Salt Lake City, the
purchase price of each car being $1650, less twenty per cent
discount, except car No. 386, on which, as appears from the
invoice, an additional "5% extra on 386 acct. for own use"
was allowed, which was in accordance with the prior agree-
ment. The transaction is fully explained in the following
letter from the buggy company to appellant.

"Columbus, Ohio, June 17, 1907.
"Consolidated Wagon & Machine Company, Salt Lake
City, Utah—Gentlemen: Have just had a talk with Mr.
Odell over the telephone and instructed him to have car for-
warded from Julesburg direct to Salt Lake, but with the un-
derstanding that if any damages occurred while the car was

held, that we should have to look to you or the R. C. Co., through you, to reimburse us for such damages, or rather to stand the damages. This will be proper because of the fact that the car was consigned to us. We have also recalled the other draft from bank and have drawn on you to-day for $2605.65. Accompanying our draft, is an order on the R. R. Co., to deliver cars to you. Our draft we explain as follows:

| | | |
|---|---:|---:|
| Two No. 1,001 at $1650.00 Ea................ | $3300 | 00 |
| 20 per cent discount........................ | 660 | 00 |
| Less 5 per cent for one car for Mr. Odell's use at $1320.00 net .......................... | $ 66 | 00 |
| | $2574 | 00 |
| Invoice 5—28 for casing.................... | 31 | 65 |
| | $2605 | 65 |

"The understanding with Mr. Odell is that the two cars for which we did not draw are to be taken by you on special consignment to be disposed of and remitted for when sold. The writer has known your house so long and your record for 'fair and square' dealing and is willing to turn these cars over to you on this understanding, believing that we shall receive remittance as soon as sold and further than that, that you will make every effort possible to dispose of the cars just as though you had your money tied up in them. Yours truly, The Columbus Buggy Co., by O. H. Perry."

It also appears from the evidence that immediately after the foregoing arrangement was consummated appellant sold and delivered two of the cars, while the other two remained in its possession; that one of the cars remaining unsold and in its possession was car No. 386, the one on which the special discount was made for the reasons stated; that during the fall and winter of 1907 and the spring of 1908 the buggy company repeatedly requested settlement from appellant for the two cars remaining unsold, but appellant insisted that

under the arrangement entered into it was not required to pay for the cars until sale, and that, although it had made every reasonable effort to sell them, it was unable to do so; that in the spring of 1908 the buggy company directed the defendant Samuel Davidson, its western sales agent, to go to Salt Lake City and make some final disposition of the two cars; that Mr. Davidson, on arriving at Salt Lake City, Utah, immediately called at appellant's place of business, and the matter of disposing of the two cars was taken up. Appellant's general manager, Mr. Odell, informed Mr. Davidson that Mr. Smith desired to purchase an electric car for his mother, the respondent; that Mr. Smith was a reputable attorney, reliable and able to pay for the car. Mr. Davidson, pursuant to the foregoing information, called on Mr. Smith, informing him that he came there at the request of Mr. Odell. Mr. Davidson represented to Mr. Smith that the car in question (which is car No. 386, the one on which the special discount was made for Mr. Odell) was received by appellant in November or December, 1907; that it was a new car and in good condition in every particular; that it had only been used for the purposes of demonstration, and for such purposes had been run about sixty or seventy miles, and no more, as indicated by the odometer. Mr. Smith went to Mr. Odell, who was his friend, and reported the representations made by Mr. Davidson to him and also to another officer of appellant, and they both confirmed Mr. Davidson's statements. Mr. Smith thereupon purchased the car and paid appellant the purchase price, as before stated. At the time Smith purchased the car, he had no knowledge of appellant's relation to the car in question, nor of the relations existing between appellant and the buggy company, but supposed that the car was exclusively owned by the latter company, as he had been informed by Mr. Odell, and that appellant only had a claim on the car for storage, amounting to about six dollars. Mr. Smith knew little or nothing about an electric car, and in making the purchase relied exclusively upon the statements and representations made to him by Davidson, as confirmed by Mr. Odell and Mr. Young, both of whom were

officers of appellant. In other words, Mr. Smith relied entirely on what Mr. Odell and Mr. Young said about the qualities and condition of the car in question.

At the time the car was purchased, Mr. Smith made arrangements with Mr. Odell that the car should be kept at the salesroom of appellant, should be charged by its employees, when necessary, and that they should, for a specified time, instruct Mr. Smith's sister with respect to the management and operation of the car. Pursuant to this arrangement, the car was left at appellant's place of business, and Mr. Smith's sister used and operated it by making drives about Salt Lake City and vicinity. In operating and using the car, Mr. Smith's sister discovered that the car would not, on being sufficiently charged, run the distance nor make the speed that it was represented it would with the battery in the car. She spoke to appellant's employees about the matter, but was given no definite information nor advice with respect thereto. This, however, was for the apparent reason that no one seemed to know what the real difficulty with the car was. It was apparent, however, that the battery did not develop sufficient power to propel the car, either for the distance or at the speed, as other similar cars; nor did it travel for the distance nor at the speed represented. After about a month, the car was moved from appellant's place of business to a garage; and while there it was discovered that at some time some one had repaired a terminal, which had been "burned out." Mr. Smith's sister called attention to this fact, and in connection therewith frequently spoke to one of appellant's officers about the unsatisfactory condition of the car with regard to speed; but, she says, "Mr. Young didn't tell me anything definite. He simply put me off; that's all."

After this, the car was again removed to another garage, which was in charge of men who had special knowledge with respect to the care and management of electric cars. After the car was there for some time, the battery was removed, for the purpose of cleaning the cells in accordance with the directions of the manufacturers, and it was then discovered

for the first time that four of the twenty-four cells constitut-
ing the battery were of a different make from the other
twenty, and of a different make from that used by the buggy
company for its cars. It also was made to appear that these
four cells had the appearance of being older than the rest,
and were much deteriorated, and thus greatly reduced the
power of the battery as a whole. Mr. Smith had some con-
sultation about the matter with appellant's officers, includ-
ing Mr. Odell; but in doing so he always proceeded upon the
assumption that he had purchased the car from the buggy
company, and that that company alone was responsible. He
even sought to obtain particular information from appel-
lant's officers with regard to the real ownership and condi-
tion of the car in question, but received no definite nor satis-
factory information from them, and was permitted, if not
induced to believe that he was dealing entirely with the
buggy company. This condition of affairs continued up to
the time that Mr. Smith served notice on the agent of the
buggy company that he had elected to rescind the sale and
demanded back the purchase price of the car. Mr. Odell
then advised Mr. Smith not to rescind, and said he would
undertake to obtain a satisfactory adjustment of the diffi-
culty. It was not until after Mr. Smith had commenced
this action against the buggy company and Davidson that he,
by piecemeal, learned the facts with regard to appellant's true
relation to the car and transaction in question; and when he
did so he immediately asked that it be made a party to this
action, as hereinbefore stated.

It is true, as appellant's counsel insist, that the buggy
company could not, without Mr. Odell's consent, select a car
for him by selecting car No. 386, the car in question. It is
also true, as they contend, that the two other cars were sold
and the car in question retained upon the so-called special
consignment agreement. The question, however, is not
whether Mr. Odell selected car No. 386 for his own use, or
whether he selected any one of the four cars for his own use.
There is no direct evidence that Mr. Odell selected any one
of the four cars for his own use; but whether he did or not

the car in question is the one upon which the special discount
was made at his request, and is the one that was paid for by
the draft drawn on appellant, as appears from the letter of
June 27, 1907, which we have copied in full, and which
draft all agree was paid by appellant. Whatever may be con-
sidered to be the legal effect of the so-called special consign-
ment agreement, the fact remains that, by virtue of the pay-
ment of the draft, as aforesaid, car No. 386, the car in ques-
tion, was specifically identified as one of the cars that was
paid for in full by said draft; and therefore the title thereto
passed and was vested in appellant. Suppose car No. 386,
after payment of the draft and before the sale thereof to Mr.
Smith, had been destroyed by fire, or had been damaged or
destroyed in an accident, could the buggy company have suc-
cessfully claimed the car as its own, and could it have re-
covered against the insurance company who had insured the
car, or a wrongdoer, in the face of the foregoing facts?
Again, could the creditors of the buggy company have suc-
ceeded in their claim that the car in question was its property
under the foregoing conditions? Upon the other hand, un-
der the circumstances, would not the claim by the creditors
of appellant that said car was its property have been favor-
ably considered by any court? We think no other conclusion
is permissible than that the jury were justified in finding that
the car in question belonged to appellant when the sale was
made to Mr. Smith. There was also ample evidence to jus-
tify the jury in finding that in making the sale Mr. Davidson
made the representations claimed by Mr. Smith; that Mr.
Smith immediately reported the representations to some of
the officers of appellant, including Mr. Odell, its general
manager; and that said representations were confirmed by
them; and that said representations were not true in fact.
The evidence is ample to sustain a finding that the battery
used in the car in question had at some time been tampered
with, and that some of the cells composing the battery were
deteriorated and almost useless, which condition materially
affected the value and usefulness of the car. The evidence
is also ample to sustain a finding that Mr. Smith did not

know of the foregoing conditions, and had no knowledge with respect to what might affect electric batteries, but in that regard relied entirely upon the knowledge and representations of appellant's officers and agents.

The only points upon which the evidence is weak and inconclusive is whether the appellant, at the time of the sale, knew of the defective battery, and whether it or some one else was, and hence should be held, responsible for the condition of the battery in the car in question. While there is considerable evidence relating to the foregoing questions, it is all inferential. The only way respondent undertook to establish appellant's responsibility was by showing that the battery was in the same condition when the defect therein was discovered as it was when Mr. Smith, respondent's son and agent, received the car for her, and that no one had tampered with it while it was in her possession, or in the possession of those who had charge of it for her. It also was made to appear that when the car was shipped by the buggy company it was supplied with a battery, all the cells of which were alike and of a particular make. We have, however, already gone into much of the details, and we cannot rehearse all the facts and circumstances from which conflicting inferences might be deduced by different minds; and it must therefore suffice to say that if we had been sitting as triers of fact we might, perhaps, have arrived at a conclusion upon this point different from that arrived at by the jury. In view of all the facts and circumstances, however, including the conduct of appellant's officers and agents, we cannot say that there are not sufficient facts in evidence from which the jury were justified in finding that appellant, through some of its officers and agents, had knowledge of the actual condition of the car at the time the sale was made, and that it should be held responsible for that condition and the untruthful representations that were made with respect thereto. In other words, there is some substantial evidence, although inferential, in support of every essential element which respondent was required to establish to entitle her to recover back her money;

40 Utah—38

and the finding of the jury is therefore supported by sufficient evidence.

The case was tried and submitted on the theory that respondent was required to prove by a preponderance of the evidence that the representations were false and fraudulent, and that appellant knew them to be so. In view that the case was submitted upon that theory, we have thus far also treated it upon the same theory. This, however, was not an action for deceit. It was one to rescind a contract and to leave the parties thereto in *status quo*. In the latter action, it is not essential, like in the former, that the party who made the representations knew them to be false. It is enough if it be shown that the representations were in fact false; that the party who rescinds had a right to rely and did rely on them, and was thereby deceived, and for that reason entered into the contract of purchase; and that the representations were material—that is, that they related to the subject-matter of the contract of purchase. All the well-considered cases are to this effect. See, among others, *Kountze v. Kennedy,* 147 N. Y. 129, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651; *Foster v. Wilshusen,* 14 Misc. Rep. 520, 35 N. Y. Supp. 1083; *McClellan v. Scott,* 24 Wis. 81, and cases cited in them. The court therefore did not err in refusing to direct a verdict for appellant.

What has been said also disposes of the contention that the court erred in not granting appellant's motion for a new trial upon the ground of the insufficiency of the evidence to support the verdict.

The next contention is that the verdict and judgment should not be permitted to stand, because the jury in returning their verdict found against appellant alone, and made no finding at all either for or against either of the other two defendants. Appellant's counsel contend that this constituted reversible error; while respondent's counsel insist that the defendants were sued as tortfeasors, and therefore respondent could have sued one or all of them in the same action, and, if this be so, she could at any time discontinue the action as against any one or more, and prosecute it

against any one of them. It is contended, therefore, that what happened in this case simply amounts to a discontinuance or dismissal of the action as against all of the defendants, except appellant; that, in view that such a course is legally permissible in a tort action, appellant is not legally prejudiced, and hence cannot complain. We have already stated that this action was brought to rescind a contract of purchase.

No doubt, as a general rule, all those who take part in committing an actionable fraud are wrongdoers, and ordinarily may be termed joint tort-feasors. It is also true that if this action was an action for deceit, or one to recover the damages that may have been sustained by reason of the alleged false and fraudulent representations, in either event, the action would sound in tort. Whether an action for the rescission of a contract, when all that is sought thereby is to put the parties to the action in *status quo,* is an action that may be treated as one in tort may well be doubted. In *Carter v. Glass,* 44 Mich. 155, 6. N. W. 200, 38 Am. Rep. 240, Mr. Justice Cooley, however, affirmed a judgment, wherein the trial court permitted a recovery "as upon a rescission of the contract" (using the justice's own language), in an action for tort. But we shall assume, for the purposes of this decision, that this action was not an action sounding in tort. Even then, we cannot see how appellant was or could be legally injured by the form of the verdict as it was returned by the jury.

There certainly is no room for doubt as against which one of the three defendants the jury intended to return a verdict. Under the evidence, they were also justified in finding that appellant alone entered into the contract with Mr. Smith. In other words, that appellant was the sole vendor of the car in question. When the action was commenced, however, respondent was unable to determine who, among the three defendants, was the vendor, and thus she did what she had a clear legal right to do, namely, sued them all in one action. When the evidence was all in, however, the jury were satisfied that appellant was the vendor; that it should be held respon-

sible for the misrepresentations, and hence returned a verdict
against it alone. If appellant was the sole vendor, as the
jury found it was, how can it complain if the sale is
rescinded as against it alone? If it made the sale alone, then
it can only be rescinded as against it alone. What the rights,
if any, may be as between the appellant and its codefendants
is no concern of respondent. The action was not against
them as joint obligors; but, even though it had been, and in
such event it had been developed at the trial that only one
was obligated, a verdict against that one alone would clearly
be good, if sustained by the evidence. We cannot see how
appellant was prejudiced, simply because the jury did not in
express terms find in favor of the other two defendants. We
think the only legal effect that can be given to the verdict is
that it either amounts to a finding in favor of the other two
defendants, or to a dismissal of the action as against them.
In either case, appellant cannot complain. We are clearly
of the opinion that this assignment should not prevail.

Counsel also insist that the court erred in stating the issues
to the jury. It seems the court copied the complaint and such
portions of the answers as presented the material issues in the
instructions to the jury, instead of making a separate and
more condensed statement of the issues to them. It is
strenuously urged that in doing so the court offended against
the rule laid down by us in the case of *Pulos v. D. & R. G.
W. Ry. Co.*, 37 Utah, 238, 107 Pac. 241. By referring to
the decision of that case, it will appear that the court
in its instructions to the jury merely referred them
to the pleadings themselves for a statement of the is-
sues, and for that purpose directed the jury to take the plead-
ings with them when they retired to deliberate upon their
verdict. This court, in speaking through Mr. Chief Justice
Straup, there held that it was error to permit the jury to take
the pleadings to the jury room for the sole purpose of de-
termining the issues for themselves therefrom, and further
held that it was the duty of the court to construe the plead-
ings and to define the issues and to state them clearly and
concisely to the jury. We, however, did not hold, and such

is not the law, that the court might, under no circumstances, state the issues in the language of the pleadings. Of course, many things may be stated in a complaint that may be admitted or not disputed in an answer; and the same may be true with regard to the answer and the reply thereto. Under such circumstances, it may be misleading to the jury to copy the whole pleadings in stating the issues, because all of the matters of fact that are admitted in a pleading or not denied, no longer present any issue to be tried by the jury. In this case, however, all the facts relating to the respondent's right of recovery were denied, and the court only copied such portions of the answer as raised some issue in the case. While it is desirable in all cases that the jury, who are laymen and unfamiliar with the rules of pleading or construction, should, as clearly and as briefly as possible, be told the precise issues that are to be determined by them, yet, where the issues are stated in the language of the pleadings, and it is not made to appear that the jury were either misled or confused by the method pursued, the judgment cannot be reversed for the sole reason that the court stated the issues in the language of the pleadings. We can discover nothing in the record before us from which it is made to appear that the appellant was in any way or to any extent prejudiced by the statement of the issues in the manner in which it was done. This assignment must therefore fail.

It is further contended that the court erred in not holding, as a matter of law, that the respondent had waived her right to rescind, and that the rescission was not made within a reasonable time. We are of the opinion, however, that, in view of all the facts and circumstances, these questions were questions of fact, and as such were peculiarly within the province of the jury to pass on. The general rule upon this subject is clearly stated in 35 Cyc. 151, in the following words:

"While it is not necessary that a buyer rescind a sale immediately upon his discovery of grounds therefor, the buyer must exercise his right to rescind within a reasonable time after discovery of the facts justifying rescission. What is a reasonable time must in each case depend on the circumstances attending it, such as the nature of the objection, the location of the parties with respect to each other, and

the like. Whether the right to rescind was exercised within a rea-
sonable time is usually regarded as a question of fact for the jury;
but the time may be so short or so long as to justify the court in
pronouncing it reasonable or unreasonable as a matter of law. The
time within which the right is exercised must be computed from
the discovery of the fraud or defect on which rescission is based,
and not from the date of the sale. But the buyer must use reason-
able diligence to ascertain the facts, especially if there is anything
to put him on inquiry."

We consider the foregoing a correct statement of the law
upon the subject. It is true that the rescission was not made
in this case until about five and one-half months after the
sale and delivery of the car to the purchaser. If it be kept
in mind, however, that neither Mr. Smith nor his sister had
any technical knowledge, in fact, no practical knowledge, of
any kind concerning electric automobiles, and that they were
absolutely dependent upon those possessing such knowledge,
and further keeping in mind the circumstances under which
the car was used and the conduct of the officers and agents
of appellant as the same was detailed to the jury, we cannot
see any reason for holding that the court erred in submitting
the whole matter to the jury, or that there was not sufficient
evidence to justify the jury in finding that the respondent
had not waived the right to rescind the sale, and that she
exercised such right within a reasonable time.

Counsel also insist that the court erred, both in charging
the jury upon its own motion and in refusing certain requests
to charge, and in modifying others that were offered by ap-
pellant. Counsel excepted to eleven out of twenty-two sepa-
rate paragraphs of the court's charge. The exceptions, how-
ever, are all directed to the separate paragraphs *in solido*. It
has so often been held by this court that exceptions in such
form are unavailing, unless the paragraphs to which excep-
tions are directed are bad, when considered as a whole, that
the rule may be deemed almost elementary. There are
only one or two paragraphs among all of those which
are excepted to that state but one legal proposition or
cover only one question; and the exceptions to those para-
graphs cannot be sustained, because the court stated the law
correctly. All of the other paragraphs that are excepted to
state more than one legal proposition, or relate to more than

one subject or question, which subjects or questions are not vulnerable to the criticisms urged against the whole paragraph, even if it were conceded that the criticisms were well founded. Under such circumstances, the rule laid down by this court in *Farnsworth v. U. P. Coal Co.*, 32 Utah, 112, 89 Pac. 74, and *Ryan v. Curlew Irr. & Res. Co.*, 36 Utah, 393, 104 Pac. 218, must prevail.

Nor can the exceptions to the court's refusal to give appellant's requests, twenty-two in number, be sustained. Nor can we treat these requests separately. There is nothing in them, however, that is not substantially covered in the court's general charge. Indeed, some of appellant's requests were given verbatim, others were only slightly modified, while the substance of others was included in the court's charge.

Nor is the contention tenable that the court failed to charge the jury that the false representations, in order to avail the respondent, had to relate to some substantial or material matter or thing. The court did so charge in one of the instructions; and it was not necessary to repeat the statement in other instructions as counsel seem to think it was. The court distinctly told the jury that they must not consider any instruction by itself, but that they must consider all the paragraphs together, and be governed as to the law of the case as found in the instructions, when considered as a whole.

Nor can the numerous objections to the admission of evidence be sustained. . If the theory upon which appellant's counsel seem to proceed were correct, it would be almost, if not quite, impossible to show cause for a rescission of a sale in any case. Counsel seem to think that neither words, acts, nor conduct were proper to be shown, unless they occurred before the sale. If Mr. Smith had been fully informed of the matters complained of by appellant's counsel as having been improperly admitted in evidence, he would have had no cause to rescind the sale, because he then would have known all the facts before he purchased the car, and, under such circumstances, would be deemed to have waived the right to object later. Mr. Smith, who acted as sole agent of respondent, and to whom the representations were made concerning the

condition and capacity of the battery, did not know any of the facts, and only was informed of them after the sale. He therefore could only enlighten the court and jury by telling them what he learned, and when and how he learned it; and from all the facts and circumstances it was for the jury to say whether those who made the sale and made the representations to Mr. Smith were the agents of appellant, and whether they knew the condition of the car. The principal objection in this regard, however, relates to certain rulings of the court in admitting statements and declarations made by either one or the other of the two defendants, and which were admitted in evidence over appellant's objections. This case presents the usual difficulty of cases where several joint tort-feasors are made parties to an action, and who are in some way related to the transactions that gave rise to the action. Every statement or declaration that was admitted was properly admitted as against either one or the other of the defendants, including appellant. The court in explicit terms told the jury that they could only consider such statements or declarations against the party making them, unless the evidence showed that the others, under the rules stated by the court, are also to be bound thereby. Indeed, upon this phase of the case, the court instructed the jury in the very language proposed by appellant's counsel. Appellant's rights in this regard were therefore protected by the only method known to be practicable under our system of jurisprudence.

We cannot stop to give special reasons why we think the other forty or fifty assignments, relating to particular questions and answers propounded and given during the course of the trial, are without merit. It is clear to us from the whole record that the court committed no error prejudicial either in the admission or the exclusion of evidence. The case belongs to that peculiar class which engenders strong feelings in both client and counsel. We have no doubt whatever of appellant's counsel's sincerity when they assert over and over again in their brief that their client has suffered injustice at the hands of both the court and jury. Neither are we persuaded that they will feel reconciled with this decision. The facts

and circumstances of the case are such that both client and counsel would feel aggrieved whatever way the case were decided, and it would be appealed so long as an appeal were possible; and when it had been finally decided by the last court some one would still sigh for another chance. This, however, is no reason why the case should not be determined in accordance with our convictions and best judgment. After giving the questions presented by the record due consideration, we are convinced that there is no sufficient legal cause to authorize us to interfere with the judgment.

It is therefore affirmed, with costs to respondent.

McCARTY, J., concurs.

STRAUP, J.

I fully concur with all the conclusions. I wish only to add that I think this not an action of deceit in tort, but one for an informal rescission of a contract at law upon alleged grounds of misrepresentations and fraud, and for a recovery of what the plaintiff parted with under, or by reason of, the contract. I, too, think it is the duty of the court in its charge to clearly define and state to the jury the issues submitted to them. When such issues are clearly and concisely stated in the pleadings, and in ordinarily intelligent language, the court, of course, may state them to the jury in the language of the pleadings. If, however, the issues are stated in the pleadings, in language of more or less uncertain or doubtful meaning, or difficult of ordinary comprehension, or "so smothered in verbiage, clogged and cloaked with matters of evidence and conclusions of law, as to require a hunt for the issue known to be lurking somewhere in the depths of literary foliage" (Harris, Docket No. 29), as they sometimes are, the court, instead of stating the issues in such language, should determine what the real issues are as presented by the pleadings, and specifically and clearly in its own language define and state them to the jury.

The statement of the issues here in the language of the pleadings is not open to this objection, and is in accordance with the rule heretofore announced by us.