HARRIS HAUSMAN and DAVID I. ROSENMOND, Respondents,
        v. LIBER BUCHMAN and Others, Appellants.

First Department, December 5, 1919.

Sales — resale — whether resale made within reasonable time ques-
    tion for jury — sale of goods to be manufactured — repudia-
    tion by vendee — measure of damages — contract evidenced by
    correspondence — intention of parties as question for jury —
    admissibility of parol evidence to show intention of parties.

Where the defendants refused to receive goods ordered by them from the
    plaintiffs prior to the close of war activities, and it appears that owing
    to the signing of the armistice the price of the goods dropped and the
    plaintiffs held them awaiting better prices before disposing. of them as
    agents of the defendants, the question whether the plaintiffs exercised
    reasonable care and judgment in making the resale within the meaning
    of subdivision 5 of section 141 of the Personal Property Law is a question
    of fact for the jury.
In an action by a vendor for repudiation of a contract for the sale of goods
    to be manufactured, his damages are the difference between the contract
    price to be paid by the vendee and what it would have cost him to perform.
Accordingly where a contract for the sale of goods to be manufactured in
    North Carolina provided for delivery to the vendee at New York city,
    while the delivery to the vendor from the manufacturer was to be made
    at the mill in North Carolina, the damages which the vendor may recover
    are to be determined by the difference between the price of the goods at
    the mill plus the cost of freight to New York, and the price stipulated to
    be paid by the vendee, and the burden is on the vendor to show the
    amount of the freight charges.
Where a contract is evidenced by correspondence, and different inferences
    may be drawn therefrom, the intention of the parties becomes a question
    of fact for the jury, and where there is any uncertainty in the contract,
    the meaning and intention of the parties may be shown by parol.

APPEAL by the defendants, Liber Buchman and others,
from a judgment of the Supreme Court in favor of the plain-
tiffs, entered in the office of the clerk of the county of New
York on the 2d day of June, 1919, upon the verdict of a jury.

I. Maurice Wormser of counsel [Samuel L. Wallerstein,
attorney], for the appellants.

Irving L. Ernst of counsel [Olcott, Bonynge, McManus &
Ernst, attorneys], for the respondents.

LAUGHLIN, J.:.

This is an action on a contract made between the parties on the 9th day of October, 1918. The plaintiffs were engaged in the cotton goods business in the city of New York as copartners, and the defendants were engaged in business at the same place. It is to be inferred from the testimony that the defendants were negotiating a contract with the government for pillows in the performance of which they would require a considerable quantity of cotton ticking. On the 27th day of September, 1918, the plaintiffs wrote the defendants, confirming a telephone conversation, stating that they could furnish defendants with from 100,000 to 150,000 yards of twenty-eight and one-half inch A.C.A. ticking, weighing eight ounces to the thirty-two inch width, for deliveries in November, December and January, at forty cents per yard and could give the defendants an option on that quantity of ticking, like a sample of thirty-two inch ticking submitted the day before, the option to continue until the fourth of October, by which time the plaintiffs expected to have the defendants' order. It appears that on the 9th day of October, 1918, the defendants had succeeded in negotiating such a contract with the government, in the performance of which they would require 35,000 yards of this ticking of the width of twenty-eight and one-half inches, and on that day they negotiated a contract with the plaintiffs therefor by telephone. The plaintiffs did not have the goods on hand and it was understood that they were to have them manufactured. After the contract was thus verbally negotiated, and on the same day, the defendants wrote the plaintiffs with respect thereto as follows:

" As per conversation over the telephone this afternoon, you will please enter our order for 35,000 yards of 8 oz., 28½" wide, A.C.A. Ticking, at 40c per yard, usual terms.

" As spoken to you already, it is understood that this ticking is to be in accordance with the original count of thread as written by you on September 27th, 88 x 58.

" As soon as we hear from the Medical Department, we will inform you as to our contract number which will enable you to rush this ticking through for us. You will please start in delivery at the very earliest possible date, not later than November 5th."

To this the plaintiffs replied next day, as follows:

" We have your favor of the 9th instant, confirming order you placed with us over the 'phone, for 35,000 yards 28½" A.C.A. ticking at 40c per yard, as per samples submitted to you, of these goods.

" This order has been booked, and we await receipt of the Government order number, so as to expedite deliveries of this merchandise."

Both parties understood that the government, on account of the war, was exercising supervision over raw material and manufactured products of this kind and over the shipment thereof. The plaintiffs showed in effect that owing to this supervision the mills were required to give preference to work on government orders and to orders for goods to be used in the fulfillment of contracts with the government. The mills were not permitted to give preference to the manufacture of such goods until the number of the government contract in the fulfillment of which the goods were to be used was furnished. The plaintiffs not having received the number of the defendants' contract with the government wrote the defendants on the twenty-fourth of October, referring to the order for the goods, and asking for the government contract number, saying it would " accelerate shipments if we have the Government number." To that the defendants replied the next day stating that although they had gone ahead with the manufacture of the pillows they had not received their contract number and that doubtless they would receive it in a few days and would then communicate with the plaintiffs. The government contract number was not communicated to the plaintiffs until November second when they received a letter from the defendants, dated November first, as follows:

" We beg to inform you that our Government contract number is No. 7169-N, dated October 17th.

" We are furnishing you with the above information whereby we trust same will enable you to make us prompt shipments of the ticking which we have on contract with you."

One of the plaintiffs testified that they had not done anything and could not do anything toward the manufacture of the goods until they received the government contract number and that on receiving it they notified the mill at Bolingbroke,

N. C., with which they had on October 10, 1918, placed an order for the manufacture of 50,000 yards of these goods at thirty-five and one-half cents per yard, delivery to be made at the mill. It is fairly to be inferred from the evidence, although it is not so expressly shown, that on or prior to December seventh the plaintiffs received in New York two cases of the goods from the mill containing 2,661 yards, for on that day they made their own invoice, dated at New York, of two cases of the goods and sent it to the defendants by mail. On December thirteenth the defendants returned the invoice stating that as already explained they could not accept the ticking on account of the delay in delivering it and because no delivery was made on or prior to the fifth of November. The plaintiffs returned the invoice to the defendants on the twenty-sixth of December saying the defendants had been informed when the order was taken that the mill could not commence manufacturing the goods until it received the government contract number; that it took from four to six weeks before deliveries could be made thereunder after the receipt of the contract number, and that the defendants had failed to furnish the government contract number until November first, thereby causing the delay in delivery. The defendants returned the invoices two days later and informed the plaintiffs by letter that they would stand on their letter of December thirteenth. There was testimony with respect to conversations between the parties tending to show that the defendants had not insisted on delivery of some of the goods on November fifth, and had manifested a willingness to accept them after that date. The plaintiffs also showed, over appropriate objections and exceptions duly taken by the defendants, that it was understood between the parties when the contract was negotiated that the plaintiffs were to have said goods manufactured by the mill at North Carolina and that it would take from four to six weeks after the receipt of the government contract number before delivery could be made. The only question of fact, with respect to liability, however, submitted to the jury was whether the plaintiffs' time for performance under the contract evidenced by the letters was extended after the contract was made. While there was some evidence tending to show

the waiver of strict performance and an agreement for an extension it is quite evident that the plaintiffs' principal claim on the trial was that they were not in default even under the contract and that the delay was caused by the defendants' failure to furnish the government contract number. There was no request to have any question of fact arising on the testimony with respect to the understanding that the order was to be placed with said mill and that the mill was not to commence work on the same until the receipt by it of the government contract number submitted to the jury. The evidence shows that when the defendants definitely refused to accept the goods 13,124 yards had been manufactured and received by the plaintiffs in New York for delivery to the defendants and that the plaintiffs canceled the order for the balance. The goods refused by the defendants were held by the plaintiffs until March 14, 1919, when they were sold at public auction after due notice of the sale thereof had been given to the defendants. It appears that owing to the signing of the armistice the price of such goods dropped and the plaintiffs held the goods awaiting better prices before disposing of them as agents of the defendants. Section 141, subdivision 5, of the Personal Property Law (as added by Laws of 1911, chap. 571), which is also known as the Sales of Goods Act, required the plaintiffs to " exercise reasonable care and judgment in making a resale." Whether in the circumstances the resale was made by the plaintiffs within a reasonable time was a question of fact for the jury and was properly left to them. The court instructed the jury that with respect to the goods, the manufacture of which the plaintiffs stopped, the plaintiffs were entitled to recover the difference between the price agreed to be paid by the defendants and the price the plaintiffs were to pay the mill for delivery at the mill in North Carolina. The plaintiffs were to deliver to the defendants in New York city. There is no evidence with respect to the cost of transportation from the mill to New York city. The attention of the court was drawn to the fact that the delivery to the plaintiffs was to be made f. o. b. the mills and that since the plaintiffs would have been obliged to pay the freight from there to New York city their profits would have been reduced by the amount of the freight. The court refused so to instruct the jury and

an exception was duly taken to the charge as made authorizing a recovery of four and one-half cents per yard. The learned counsel for the plaintiffs attempts to sustain the judgment on the theory that the burden was on the defendants to show the amount of the freight charges. We think not. Where, as here, the contract is for the manufacture of goods, in an action by the vendor for repudiation of the contract before manufacture his damages are the difference between the contract price to be paid by the vendee and what it would have cost him to perform. (*Oswego Falls P. & P. Co.* v. *Stecher Lith. Co.*, 215 N. Y. 98; *McMaster* v. *State of New York*, 108 id. 542; *Todd* v. *Gamble*, 148 id. 382; *Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 id. 528; *Meyer Brothers Drug Co.* v. *McKinney*, 137 App. Div. 541; *Isaacs* v. *Terry & Tench Co.*, 125 id. 532.) This error requires a new trial, but for the aid of the trial court we deem it proper to express an opinion with respect to the reception of the parol evidence received over the defendants' objections and exceptions as already stated. We think the parol evidence thus received was not inconsistent with the letters exchanged between the parties evidencing the contract that had been negotiated. In each of the letters which it is claimed affords the only evidence of the contract there is a reference to the government contract number. In the defendants' letter they agreed to inform the plaintiffs as soon as they heard from the Medical Department of the government and they state that this would enable the plaintiffs " to rush this ticking through " for them. In the plaintiffs' letter they say they have booked the order and " await receipt of the government order number, so as to expedite deliveries of this merchandise." Where a contract is evidenced by correspondence and different inferences may be drawn therefrom the intention of the parties becomes a question of fact for the jury (*Lamb* v. *Norcross Brothers Co.*, 208 N. Y. 427), and where there is any uncertainty in a contract the meaning and intention of the parties may be shown by parol. (*Moore* v. *Meacham*, 10 N. Y. 207.) I am of opinion that this contract is not subject to the rule that where different inferences may be drawn from the correspondence it is for the jury to say what the parties meant. But I think the contract is ambiguous on the point as to whether it was

understood that furnishing the government contract number would affect the *manufacture* of the goods or only the *transportation* thereof; and, therefore, under the well-settled rule parol evidence was admissible to show that government orders were entitled to preference at the mills and that the mills were not authorized to give a preference until they received the number of the government contract and that this was well understood by both parties.

It follows that the judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellants to abide event.