W. H. FOWLER, Appellee, v. JOHN R. DIELEMAN et al., Appellants.

**FORCIBLE ENTRY AND DETAINER:** Vendor and Purchaser. A vendor of land may not maintain forcible entry and detainer against his purchaser, because of default in the payment of deferred installments, *when the contract of sale has neither been canceled nor rescinded.*

*Appeal from Des Moines Municipal Court.*—J. E. MERSHON, Judge.

NOVEMBER 22, 1921.

ACTION of forcible entry and detainer, for the possession of a certain house and lot in the city of Des Moines. Trial to a jury, and verdict directed for the plaintiff. Defendants appeal. —*Reversed.*

*Herman F. Zeuch,* for appellants.

*Frank T. Jensen,* for appellee.

WEAVER, J.—The material facts in the case are, for the most part, undisputed. Briefly stated, they are as follows: On May 1, 1920, the plaintiff, Fowler, being then the owner of the house and lot in question, entered into a written contract with the defendants Dieleman and wife, by which he sold and agreed to convey said property to them for the sum of $10,000, payable

as follows: $1,000 in cash, on the execution of the agreement; $1,000 evidenced by defendants' promissory note, due November 1, 1920; and the remainder, of $8,000, on March 1, 1921. Possession was to be given July 1, 1920, and conveyance to be made by warranty deed, on or before March 1, 1921. Other stipulations have no material bearing upon this litigation. The agreement contained no provision by which time was made the essence of the contract, or by which failure to make payment of any installment should work a forfeiture of the defendants' rights under the contract or in the property. The down payment of $1,000 was made, and defendants' note for $1,000 was executed and delivered, and plaintiff thereafter disposed of it to a third party. Defendants went into possession of the property on or before the date fixed for it in the contract. It appears, though not very clearly, that, in the fall of 1920, defendants made some complaint to the plaintiff that the property was not in all respects as represented by plaintiff; but the details of the conversation and plaintiff's response thereto were excluded by the court, on plaintiff's objection. On February 16, 1921, Mr. Shankland, then acting as defendants' counsel addressed a letter to plaintiff, stating the defendants' claim that the property had been misrepresented by the plaintiff, and saying:

"Mr. Dieleman will ask that the contract be canceled on the grounds of fraud; however, he is willing to pay a reasonable rental value for the use of the property since the first day of July, 1920. Mr. Dieleman also demands the cancellation of a certain promissory note of $1,000, bearing the same date as the contract, namely, May 7, 1920."

Responding to the letter, plaintiff wrote the defendants, expressing his surprise at the defendants' attitude, insisting that he had dealt fairly in the matter and closing with the following:

"Your note and the contract are with the Farmers National Bank and you will be able to settle with them direct. I think upon second thought you will come to the conclusion that you had better stand pat and hang onto the property. I know this is a difficult time, but you have sold your home here and you ought to be able to meet the terms of your contract in good shape."

On the same day, he wrote defendants' counsel in the same

vein, declaring defendants' charges of fraud "too silly to receive my serious consideration." The matter remained without further negotiation between the parties until March 14, 1921. On that date, Mr. Jensen, as attorney for plaintiff, having in his possession a deed from plaintiff to defendants, with abstract of title to the property, also a 30-day notice to the defendants to quit possession, visited the defendants. Jensen says he did not present or tender the deed to defendants, because, on inquiry, they told him it would be of no use; whereupon, he delivered to them the notice to quit within 30 days. Defendants deny that there was any tender or offer to tender the deed, and deny that they told Jensen that such tender would be useless. On April 16, 1921, defendants being still in possession, plaintiff or his counsel served upon defendants another notice to vacate the premises within three days. This notice proving ineffective, the present action was begun, April 23, 1921.

In his petition, plaintiff sets out the contract of sale and the terms of payment, also, the letter from Shankland, hereinbefore quoted; and alleges plaintiff's readiness to carry out the contract according to its terms and tender of performance; and avers that, defendants having refused to accept such performance, plaintiff thereupon "elected to consider said contract broken, the same having been repudiated by defendants, as above alleged, and elected to keep said premises." Upon this basis of alleged facts, plaintiff contends that defendants thereby "became tenants at sufferance, or at most, tenants at will," of the premises; that this relation was terminated by the aforesaid notices to quit; and that plaintiff became entitled to immediate possession.

Defendants' demurrer to this petition was overruled, and they answered over, admitting the making of the contract, and alleging, in substance, that they thereby acquired lawful possession of the property, and that, while they did tender or offer to cancel the contract on certain terms, such terms were never accepted by plaintiff, and the contract was never canceled or rescinded. They further allege that, although they paid plaintiff the sum of $1,000 in money, and gave him their note for the further sum of $1,000, plaintiff has at no time returned or offered to return either.

The evidence offered on the trial, in so far as it is material upon this appeal, shows the facts to be substantially as we have already recited them. At the close of the testimony, each party moved for a directed verdict in his favor. Defendants' motion was denied, and plaintiff's motion was sustained. Judgment for plaintiff, as prayed.

Without further preliminaries, it may be said that the material question here presented is this: Conceding the facts to be as stated and shown by the plaintiff, can he maintain forcible entry and detainer, to regain possession of the property? This inquiry must be answered in the negative. There is no express condition or provision in the contract reserving such right in the vendor, nor is there any provision therein from which such right may be implied. Neither is there any rule or principle of the law governing the rights of the vendor and vendee of land by which, in the absence of any stipulation therefor, the vendor may re-enter possession and oust the vendee for no better reason than the failure or refusal of the latter to pay an installment of the purchase price. Under a contract such as we have in this case, the seller and purchaser occupy substantially the relation of mortgagee and mortgagor, the seller holding the legal title in trust for the purchaser, and as security for payment of the unpaid portion of the agreed price. See Code Section 4298. Code Section 4297 provides that, when the vendor has given a bond or other writing to convey land on payment of the purchase money, and default is made in such payment, then, whether time is made the essence of the contract or not, the vendor may sue, to compel specific performance or to foreclose and sell the vendee's interest in the property. This does not, of course, take from the seller the right to waive the foreclosure and sue at law, to recover a personal judgment against the buyer for the unpaid debt.

Appellee argues that this case is not subject to the ordinary rule, because the defendants "repudiated" the contract and refused to perform; and that, in such event, the vendor may treat the agreement as if it never existed, and recover the possession. We cannot concede either the premises or the conclusion. There is shown no rescission, either by the buyer, as a matter of alleged right on his part, or by the seller, or by the mutual con-

sent or agreement of the parties. The Shankland letter is, at most, a warning or threat that defendants "will ask" a cancellation, because of plaintiff's alleged fraud, and will demand a return of the consideration they had given for the property. The plaintiff distinctly refused to accede to this proposal, and advanced arguments why defendants should "stand pat," and keep the property, advising them, also, that the promissory note given for the second installment upon the purchase lien was in the Farmers National Bank, with which they must "settle direct." Plaintiff is in no position to insist that the contract has been rescinded, so long as he refuses to comply with the rule which makes the restoration to defendants of the consideration paid, an essential condition of rescission.

Quite in point upon this proposition is the discussion by the Oregon court in *Frink v. Thomas*, 20 Ore. 265, where a vendor brought suit to cancel a contract for sale of land, on the ground that defendant had "abandoned and repudiated the contract, and refused to pay the purchase price."

Stating the reasons why such relief was refused, the court says:

"It appears from the complaint that, soon after making the contract, defendant paid $340 of the purchase price. Before plaintiff can abandon the contract and treat it as at an end, he must refund or offer to refund the money paid in part performance of it, with legal accrued interest. It is a general rule that, in order to disaffirm a contract and entitle a party to the rights resulting therefrom, the rescinding party must put the other *in statu quo*. He must account to the other for any money paid in part performance of the contract. (*Knott v. Stephens*, 5 Ore. 235; *Johnson v. Jackson*, 27 Miss. 498; 2 Warville on Vendors, 881; *Thomas v. Beaton*, 25 Tex. Sup. 318.) Plaintiff does not offer to account for the money paid him by defendant in part performance of this contract, but seeks, not only to rescind the contract and retain this money, but to charge defendant with the rents and profits of the land during the time he has been in possession thereof, in addition. It would certainly be unjust to permit plaintiff, after having received a part of the purchase money, to put an end to the contract, upon the failure of defendant to pay the remainder, without offering

to account to him for the money already paid.  He who seeks the aid of a court of equity must himself do equity.  If plaintiff had tendered a deed such as the contract required, he should, in addition have returned the notes given by defendant for the purchase money, and the amount paid him by defendant, with legal interest, or at least have offered to return them, before he could be permitted to rescind.  This seems to be the universal rule.  The party against whom the rescission is sought must be placed *in statu quo*.  (*Murphy v. Lockwood,* 21 Ill. 611.)''

Of course, if a valid rescission has been accomplished by the act of either party entitled thereto, or by mutual consent, then the vendee in possession is in duty bound to surrender the premises; and upon failure to do so, may be proceeded against in an action to recover it.  In this case, however, no rescission is shown.  The vendee went into possession rightfully, under a contract with the vendor.  Mere default in payment of the deferred installments of the purchase price does not make his possession wrongful, nor entitle the vendor to remove him therefrom; and, in this state at least, even where the contract expressly provides for forfeiture and re-entry, upon failure to make payments, this provision cannot be enforced without the service of 30 days' written notice upon the vendee.  Code Sections 4299, 4300.  This provision of the statute is not satisfied by a 30-day notice to quit the possession.  The notice contemplated by the statute is a notice by the vendor of his purpose to declare a forfeiture.  To maintain forcible entry and detainer, he must show either an accomplished rescission or cancellation of his contract to sell, or a rescission by mutual agreement, and that defendant is wrongfully holding over after his right to possession has been so eliminated.  This he has not shown, and the judgment in his favor must be reversed.  The reversal thus ordered is without prejudice to plaintiff's right to pursue his remedy as he may be advised, by suit in equity for a foreclosure or by action at law for recovery of a money judgment.— *Reversed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.