Syllabus.

# Richmond.

MAYFLOWER MILLS, A CORPORATION, v. T. B. HARDY.

January 17, 1924.

1. SALES—*Action for Breach by Seller—Admission of Irrelevant Evidence—Case at Bar.*—The instant case was an action by the seller for breach of contract by the buyer to purchase "400 sacks of Red Dog (cattle feed) in brands of Daisy, Adrian, Arlington Flour, or Comet, or something the same analysis." The evidence for the defendant, admitted over the objection of the plaintiff, allowed the defense that the defendant was justified in nonacceptance of the goods, although the Red Dog tendered was shown by the uncontroverted evidence to have strictly complied with the contract requirements, merely because it possessed other qualities, objected to by the defendant after the contract was made, and which were not mentioned in the contract. This was, in effect, to allow the defendant to set up in his defense a different contract from that made with the plaintiff.

   *Held:* That this was error, which was plainly prejudicial to the plaintiff's rights and reversible.

2. SALES—*Action by Seller—Misleading Instruction—Case at Bar.*—In the instant case, an action by seller against purchaser for breach of contract to purchase "400 sacks of Red Dog in brands of Daisy, Adrian, Arlington Flour, or Comet, or something the same analysis," an instruction which, in substance, told the jury that the defendant ordered only certain brands of Red Dog, was misleading, as applicable to the evidence in the case. The defendant did not order any brand of Red Dog, except in the alternative, and in fact ordered merely something of a certain nutritive food value specified in the order.

3. SALES—*Action by Seller—Misleading Instruction—Case at Bar.*—In the instant case, an action by seller against purchaser for breach of contract to purchase "400 sacks of Red Dog in brands of Daisy, Adrian, Arlington Flour, or Comet, or something the same analysis," an instruction required the jury to find from the evidence, in order for plaintiff to recover, that the Red Dog tendered was of "equal value as a feed" with the brands ordered by defendant, not limiting that value to nutritive food value, which the contract plainly did, thus permitting the jury to erroneously consider, as bearing on the "food value," other qualities outside of the provisions of the contract

such as color, the price at which it sold, the preference of the trade, how another dealer in foodstuffs construed the order, how readily the Red Dog tendered would mix with wheat straw, and the circumstance that such Red Dog was not as finely ground as the other brands of Red Dog mentioned.

*Held:*   Error.

4. SALES—*Action by Seller Against Buyer—Falling Market—Minimizing Damages.*—In an action by seller against buyer for breach of contract, it appeared in evidence that there was a falling market during the time which intervened between the giving and acceptance of the order of sale in question and the resale of the goods by the plaintiff.   In such a situation, plaintiff should have used reasonable diligence in promptly disposing of the goods after the breach of the contract by defendant.

5. APPEAL AND ERROR—*Judgment by Appellate Court—Section 6365 of the Code of 1919—Question not Passed upon by Jury.*—In the instant case, an action by a seller against the buyer for breach of contract, the question whether the plaintiff used reasonable diligence in the resale of the goods after the breach of contract by buyer was manifestly not considered by the jury, or the court, nor put in issue by the parties on the trial below.   The Supreme Court of Appeals did not feel that the facts before it bearing on that question had been sufficiently developed to enable it to feel that it would attain the ends of justice by passing thereon and entering final judgment.

6. SALES—*Action by Seller Against Buyer—Resale—Measure of Damages.*— In an action by seller against buyer for breach of contract arising from failure of the buyer to accept the goods, the measure of damages is the loss of the plaintiff, consisting of the difference between the contract price of the goods and the net price, after deducting proper expenses of resale, and of care (if any), which they produced, or would have produced, at a resale, fairly made, and made at a time at which reasonable diligence, in promptly disposing of the goods, required that the resale should have been made, after the breach of the contract by the defendant.

7. APPEAL AND ERROR—*Judgment by Appellate Court—New Trial—Remand for the Determination of Certain Questions.*—In the instant case, an action by a seller against the buyer for breach of contract, the Supreme Court of Appeals found that the defendant breached the contract of sale sued on; that plaintiff was entitled to recover judgment against the defendant for damages for such breach; what the measure of damages was, and that the resale in the instant case was fairly made; but left open for decision on the new trial three questions, and three questions only.

Error to a judgment of the Circuit Court of Lunenburg county in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded for new trial upon certain questions designated.*

This is an action by notice of motion brought by the plaintiff in error, the Mayflower Mills, a corporation (hereinafter called plaintiff), against the defendant in error, T. B. Hardy (hereinafter called defendant), to recover the difference between the contract price of certain goods sold by the plaintiff to the defendant and the price realized therefor by the plaintiff on a subsequent resale of the goods at the market price at the time of such subsequent resale, as damages for the alleged breach of the contract by the defendant in not accepting the delivery of the goods.

Upon the trial the following was shown by the evidence, without conflict:

On September 16, 1920, an agent of the plaintiff, located at Suffolk, Va. (the plaintiff being located at Fort Wayne, Ind.), received an order in writing from the defendant, located at Victoria, Va., "for immediate or 30 days shipment" of "400 sacks of Red Dog in brands of Daisy, Adrian, Arlington Flour, or Comet, or something the same analysis," and also of certain quantities and kinds of flour, all at certain prices, at which the goods had been quoted to the defendant, the quotations being identified in the order. The controversy in the case is solely over the quality of the Red Dog ordered.

The aforesaid order was accepted by the plaintiff through its agent, by letter, written at Suffolk, Va., to

the defendant, at Victoria, Va., dated September 16, 1920.

On October 1, 1920, the defendant wrote to said agent of the plaintiff as follows:

"I understand that the Mayflower Mills do not make a Red Dog feed but a kind of midling instead; and if that is a fact, I will not accept that, and wish to countermand my order. You will please send me a sample of the above mentioned stuff before you make shipment."

The agent of plaintiff, without any communication in reply to the last mentioned letter, promptly sent to the defendant a sample of Red Dog which the plaintiff intended to furnish in filling the aforesaid order.

On October 7, 1920, the defendant wrote said agent as follows: "I write to ask you to please cancel order you have from me for flour and Red Dog. I have just received a sample of the Red Dog and find it is not as good as the brands I give you name of when writing you. I have shown the sample to several of my customers and they do not like it at all and you will readily see I cannot use anything I cannot please my trade. Hoping to do some business with you in the future, I remain yours truly."

Then followed repeated letters from the aforesaid agent to the defendant, and correspondence between the agent and the plaintiff, the substance of which the agent communicated to the defendant, to the effect that the defendant was under an erroneous impression that the Red Dog intended to be furnished him in filling his order would not comply fully with the specifications of food value contained in the order; tendering the defendant the Red Dog and other goods ordered and urging acceptance; notifying the defendant that his order was not cancelled, and that the Red Dog and other

goods were being held for him; and stating that the plaintiff would cancel the order as requested by the defendant if he would agree to pay any loss occasioned the plaintiff by reason of any difference there might be between the contract price and the market price of the goods, plus expense of resale, if the order was cancelled, and asking for prompt reply from defendant notifying the plaintiff "which way to proceed." The last letter of this correspondence in evidence was from said agent of plaintiff to the defendant, bearing date October 27, 1920. The defendant did not reply to any of the letters to him mentioned.

On November 10, 1920, the plaintiff, from Fort Wayne, Ind., wrote the defendant as follows:

"The Southern Brokerage Co." (the said agent of plaintiff) "advise us you do not give them any reply to their letters in regard to shipping car flour and feed, which we have looked for from you. We are sorry indeed you have not given the matter the necessary attention and trust you will write us by return mail with instructions to forward it. If, however, we do not hear from you we have no other choice then to sell the car for your account. Awaiting your advices, we are, Yours truly,   *   *" ·

Receiving no reply to the last mentioned letter, the plaintiff afterwards sold the goods ordered as aforesaid at the then market price of same (the sale being made on or before November 18, 1920, as it would seem from the date of the account filed with the notice of motion, such account showing such sale and being dated at "Fort Wayne, Ind., November 18, 1920"), resulting in a loss of the difference between the contract price and price obtained on such resale of $458.00.

The testimony for the plaintiff before the jury showed that the analysis of the Red Dog (which is a cattle food),

tendered by the plaintiff, was of the "same analysis" as the "Daisy, Adrian, Arlington Flour, or Comet" brands of Red Dog mentioned in the aforesaid order, except that the analysis of the former was slightly better in showing of nutritive food value. There was no evidence for the defendant, or otherwise before the jury, controverting such fact.

The defendant, however, over the objection of the· plaintiff, was permitted by the trial court to introduce the testimony of certain witnesses before the jury to the effect that the Red Dog tendered by the plaintiff "was of a different color" from that of the brands specifically mentioned in the aforesaid order; that the latter brands "were the leading brands;" that the latter brands "sold· for a much higher price," than the Red Dog tendered by the plaintiff; that "the trade in (the) vicinity (of defendant) preferred (the brands of Red Dog specifically mentioned in the said order); and that witness did not think that the Red Dog (tendered by plaintiff) could be readily sold;" that if witness (who was a dealer in feed stuffs) "had received the order (aforesaid), he would have shipped Red Dog in Daisy, Arlington, Adrian, or Comet brands and would not have shipped any other brand of Red Dog;" that the last named brand of Red Dog "would mix more readily with wheat straw" than the Red Dog tendered by the plaintiff; and two witnesses for the defendant were permitted to exhibit before the jury samples of Daisy, Arlington, Adrian and Comet brands of Red Dog, and also samples of Red Dog made by plaintiff, and to compare these samples," and to testify "that the samples (of the Red Dog) made by plaintiff "did not show up in color and was not ground as finely as the other brands of Red Dog."

And the court, at the instance of the defendant, and

over the objection of the plaintiff, gave the following instruction to the jury:

"Instruction No. 1. The court instructs the jury that the burden rests on the plaintiff to prove by a preponderance of the evidence that it has strictly complied with the terms of the contract between it and Hardy, and, in order to so comply, it must have furnished a Red Dog, or have been ready and willing to furnish a Red Dog, of equal value as a feed with the brands ordered by Hardy, and if they believe that the Red Dog which plaintiff offered to furnish was inferior as a feed to the brands ordered, then you should find for defendant."

There was a verdict for the defendant. Thereupon the plaintiff moved the court to set aside the verdict because it was contrary to the law and the evidence, and because of misdirection of the jury by the court, and because of the admission before the jury of the evidence above mentioned as admitted over the objection of the plaintiff. This motion the court overruled and entered judgment for the defendant in accordance with the verdict of the jury, and the plaintiff assigns error.

*N. S. Turnbull, Jr.,* for the plaintiff in error.

*W. E. Nelson* and *W. Moncure Gravatt,* for the defendant in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error will be disposed of in their order as stated below.

[1] 1. Did the trial court commit reversible error in

admitting the testimony for the defendant, over the objection of the plaintiff, which is referred to in the statement preceding this opinion?

The question must be answered in the affirmative.

The order given by the defendant contains the contract requirement as to the quality of the Red Dog ordered, and, as applied to the evidence in the case, the contract specified merely that the Red Dog ordered was "something (of) the same analysis," as the "Daisy, Adrian, Arlington Flour, or Comet," brands of Red Dog, or better, with respect to nutritive food value. The evidence should have been confined to the question whether the Red Dog tendered by the plaintiff did or did not possess the quality specified in the order. The aforesaid evidence for the defendant, admitted over the objection of the plaintiff, allowed the defense that the defendant was justified in nonacceptance of the goods, although the Red Dog tendered was shown by the uncontroverted evidence to have strictly complied with the contract requirements, merely because it possessed other qualities, objected to by the defendant after the contract was made and which were not mentioned in the contract.   This was, in effect, to allow the defendant to set up in his defense a different contract from that made with the plaintiff, on which the action was brought.   This was error, and plainly error which was prejudicial to the plaintiff's right.   It was therefore reversible error.

[2, 3] 2.  Did the court err in giving instruction No. 1 (set out above)?

The instruction is misleading in its statement, in substance, that the defendant ordered only certain brands of Red Dog.   As applicable to the evidence in the case, the defendant did not order any brand of Red Dog, ex-

cept in the alternative, and in fact ordered merely something of a certain nutritive food value specified in the order.   Further, the instruction required the jury to find from the evidence that the Red Dog tendered was of "equal value as a feed," not limiting that value to nutritive food value, which the contract plainly did; thus permitting the jury to erroneously consider, as bearing on the "food value," other qualities outside of the provisions of the contract—such as color, the price at which it sold, the preference of the trade, how another dealer in foodstuffs construed the order, how readily the Red Dog tendered would mix with wheat straw, and the circumstance that such Red Dog was not as finely ground as the other brands of Red Dog mentioned.

One other question remains for our determination, namely:

3. Should we enter judgment for the plaintiff, or award the plaintiff a new trial, and if so upon what questions or points should we, under section 6365 of the Code, designate that the new trial should be had?

In the petition for the writ of error the plaintiff asks that judgment be entered in its favor for the whole amount demanded on its notice of motion, namely, $458.00, with interest, from September 18, 1920.   In the court below, as it appears in the record, the motion of the plaintiff was merely to set aside the verdict, which left it open for the plaintiff to have moved that court to have entered judgment in its favor had the court granted the motion to set aside the verdict; but the latter motion was never in fact made before the trial court, so far as appears from the record.

[4, 5] As several times stated in the letters in evidence of the plaintiff to the defendant, there was a falling market during the time which intervened between the

giving and acceptance of the order in question and the resale of the goods by the plaintiff. In that situation, as held in *Amer. Hide, etc., Co.* v. *Chalkley & Co.*, 44 S. E. 705, 706, 101 Va. 458, in approving instruction 2 appearing on page 462 of the report of the case, the plaintiff should have used reasonable diligence in promptly disposing of the goods after the breach of the contract by the defendant. That is a question which has not been, but which should be, passed upon by a jury, under proper instructions. As that question manifestly was not considered by the jury, or the court, nor put in issue by the parties on the trial below, we do not feel that the facts before us bearing on that question have been sufficiently developed to enable us to feel that we would attain the ends of justice by passing thereon and entering final judgment.

In *Rosenbaums* v. *Weeden, Johnson & Co.*, 18 Gratt. (59 Va.) 785, 98 Am. Dec. 737, in view of the facts, the actual holding was, in substance, the same as in the case next above cited, although there are expressions in the opinion which indicate that the view of the court was that there is no limit of the time within which, in such case, the seller may make the resale and hold the buyer responsible for the aforesaid loss. We are, however, not disposed to adopt the latter view.

[6, 7] But we decide, upon the uncontroverted facts before us appearing in the record, that the defendant breached the contract of sale sued on; that the plaintiff is entitled to recover judgment against the defendant for damages for such breach of contract; that the measure of such damages is the loss of the plaintiff, consisting of the difference between the contract price of the goods and the net price, after deducting proper expenses of resale, and of care (if any), which they produced, or would have produced, at a resale, fairly made,.

and made at a time at which reasonable diligence in promptly disposing of the goods required that the resale should have been made, after the breach of the contract by the defendant.    And we further decide that the resale actually made in the instant case was fairly made; but we leave open for decision on the new trial three questions, and three questions only, namely: (1) When did the breach of the contract by the defendant occur?    (2) Whether the plaintiff, after the breach of the contract by the defendant, used due diligence in making the resale which was made?    and (3) If not, what would have been the loss of the plaintiff, if any, consisting of the difference between the contract price and the aforesaid net price of the goods, which they would have produced at a resale fairly made at a time at which reasonable diligence in promptly disposing of the goods required that the resale should have been made after the breach of the contract by the defendant? In the order remanding the case, the three questions mentioned will be designated as those upon which the new trial awarded is to be had.

*Reversed and remanded for new trial upon certain questions designated.*