L. P. COURSHON COMPANY et al., Appellees, v. HELEN M. BREWER, Appellant.

No. 41470.

NOVEMBER 22, 1932.

REHEARING DENIED MARCH 8, 1933.

J. E. Williams, for appellant.

L. R. Boomhower and N. Levinson, for appellees.

KINDIG, J.—This action was commenced by the plaintiffs-appellees L. P. Courshon Company and L. P. Courshon on the theory that the defendant-appellant Helen M. Brewer breached her contract to purchase the "L. P. Courshon one-stop service station" in Mason City, including the good will of the business, a Firestone Tire & Rubber Company contract and franchise, furniture, fixtures, equipment, and merchandise.

According to the appellees, the alleged contract was entered into between them and the appellant on or about December 11, 1930. It is asserted by the appellees that the appellant agreed to pay them under the contract: First, $2,000 for the good will of the business and the Firestone Tire & Rubber Company contract and franchise for the local territory; second, $3,870.29 for the merchandise on hand; and, third, $3,500 for the furniture, fixtures and equipment used in the business. The appellees' petition is divided into three counts.

At the time the contract was entered into, the appellant placed in escrow a check for $2,000 to cover the sum above specified for the good will of the business and the Firestone Tire & Rubber Company contract and franchise. Such check was to be delivered to appellees after the parties had agreed upon an inventory and valuation of the aforesaid merchandise, furniture, fixtures, and equipment. An inventory was made, and the jury found a valuation agreed upon. Accordingly, the appellant took over the business and placed her employees in charge thereof. Later, however, she refused to settle according to the terms agreed upon, and the appellees sought, by an action in spcific performance, to compel her to perform the contract. That relief was denied by the district court upon the theory, it seems, that the appellant had performed the contract in all respects except to pay the purchase price above agreed upon. Consequently the district court apparently considered that the appellees could obtain the only remaining relief necessary at law. Thereupon the appellant, the jury found, abandoned all the property except the Firestone Tire & Rubber Co. franchise and contract, which she kept. So the appellees, the jury found, in order to minimize damages, after the notice to appellant, reappraised the merchandise, furniture, fixtures, and equipment, took possession thereof as the latter's agent, and then sold the property on her account.

In the first count of their petition, the appellees seek to recover the difference between the contract and the resale price of the merchandise, furniture, fixtures, and equipment. Then, in the second count, the appellees attempt to obtain from the appellant certain rents and expenses of the resale; while in count three the appellees demand $2,000 on the aforesaid check executed by the appellant to the appellees for the Firestone contract and franchise.

I. A controversy arises between the parties concerning the measure of damages on that part of the contract relating to the mer-

chandise, furniture, fixtures, and equipment. As before indicated, the appellees seek to recover the difference between the contract price of this property and the amount received therefor on the resale.

This theory of recovery, the appellant declares, has no basis in the law. Especially is this true, the appellant contends, under the Uniform Sales Act adopted by the Iowa legislature. See Chapter 435, Title 24. Under that act, the appellant claims that there were only two remedies available to the appellees in the event the former breached her contract to purchase the personal property. These remedies are in the alternative. The one, according to the appellant, would permit the appellees to rescind the contract and receive back the property (see Section 9990, 1931 Code), and the other would entitle them to sue for the purchase price due under the agreement (see Section 9992, 1931 Code). That is true, the appellant argues, because under the appellees' theory title had passed to her and she had possession of the property. Therefore, the appellant urges that after title passed to her and she had possession of the property, the appellees had no lien on the same for the purchase price, and the provisions of Section 9983 of the 1931 Code do not apply. A concession is made by the appellant that the appellees might have sold the property in question on her account after title passed, providing the sellers still had possession thereof. See Hawkeye Security Fire Insurance Co. v. Central Trust Company of Des Moines, 208 Iowa 573. At this juncture, emphasis is placed by the appellant upon the fact that not only the title in the case at bar vested in her under appellees' theory, but that possession also had passed.

It is true, as the jury evidently found, that title to the property purchased had passed to the appellant. Likewise that body found that appellant had possession of the property when she later abandoned the same without paying therefor. There is nothing in the Uniform Sales Act, adopted in this state, covering the situation here presented. After the appellant's abandonment of the property, the appellees were confronted with an anomalous situation. Necessity seemed to demand that appellees resell the property on appellant's behalf and apply the proceeds on the contract price. This procedure appeared essential for the purpose of minimizing damages.

The Uniform Sales Act is evidently not intended as a substitute for the entire law merchant existing before its adoption. So, in any case not provided for in the Uniform Sales Act, the rules of law and equity included in the law merchant continue to apply to

contracts for the sale of goods, wares, and merchandise. Sec. 10002, 1931 Code. See also Uniform Sales Act, Annotated, Vol. I (Edward Thompson Co.), pp. 444-5, sec. 73, and notes. Under the law merchant existing in this state at the time the Uniform Sales Act was adopted, a seller, after title and possession had passed to the buyer and he then abandoned the property without paying therefor according to the contract, might retake possession of the property after notice to the buyer, sell the same on the buyer's behalf, and apply the proceeds received therefrom on the purchase price. Smith & Son v. Bloom, 159 Iowa 592; Katz v. Delohery Hat Co., 118 A. 88 (Conn.) ; Uniform Laws. Annotated, Vol. I (Edward Thompson Co.), pp. 326-7.

According to the facts presented in this record, the title to the property involved passed from the appellees to the appellant. She took possession thereof and later abandoned the same without paying therefor, according to the terms of the contract. Appellees, then, for the purpose of minimizing damages, retook possession of the property on appellant's behalf after serving due notice on her. Whereupon appellees appraised the property, informed appellant of the appraisal, and sold the goods, wares, and merchandise in good faith on her behalf. All the proceeds were applied on the contract price and recovery is now sought by appellees for the remainder. Manifestly the appellees followed a proper method and sought a proper remedy.

II. While a somewhat indifferent claim is made by the appellant that no contract of sale was ever entered into between her and the appellees, the jury, on substantial evidence and under proper instructions, found otherwise. Therefore, further discussion of this proposition is unnecessary.

The more serious argument of the appellant is directed against the action of the district court in submitting the issues to the jury under the theory of recovery approved in Division I above. This argument of the appellant's naturally divides itself into separate propositions which will be considered respectively in this and the following divisions.

An argument is first made by the appellant to the effect that the contract of sale above named, conceding that one existed, was rescinded by the mutual consent of the seller and buyer after its inception. On December 13, 1930, the appellant sent a written communication to the appellees, suggesting that she thereby rescinded

the previous contract of sale. Replying to that communication, the appellees, on December 15, 1930, in a writing addressed to and received by the appellant, informed her that they refused to rescind, but, on the other hand, would continue to hold her on the contract of sale. Consequently there was no mutual rescission under the above-named written communications.

Nevertheless, the appellant further argues that the appellees by implication accepted her offer to rescind by taking possession of the merchandise, furniture, fixtures, and equipment under an as· sumed authority to resell. Obviously, however, under the jury's finding, the appellant's contention cannot be sustained. As previously stated, after the sale was consummated, the appellant took possession of the premises and the personal property. She hired employees who conducted the business for her until the time she abandoned the same as above suggested. Among the properties thus taken possession of by the appellant was the Firestone Tire & Rubber Co. contract and franchise. This part of the property is still retained by the appellant. At no time did the appellant offer to place the appellees *in statu quo*. See Fowler v. Dieleman, 192 Iowa 563; Security Savings Bank v. Sturtz, 196 Iowa 1128; Continental National Bank v. Greene, 200 Iowa 568. In fact, she did not offer to return to them either the merchandise, furniture, fixtures, and equipment sold by her employees when in charge of the business, or the Firestone Tire & Rubber Co. contract and franchise. Under these circumstances, the appellant was not in a position to place the appellees *in statu quo*. That fact corroborates the appellees in their contention that there was no mutual rescission, but that the contract remained in full force and effect at all times. Contrary to the appellant's contention here made, the jury found, on substantial evidence, that the contract at all times remained in full force and effect, as claimed by the appellees. Likewise the jury, on substantial evidence, found that after the appellant abandoned the property without paying therefor, according to the contract, the appellees, after notice to the former, took possession of the goods, wares, and merchandise, appraised the same, resold them, and applied the proceeds on the purchase price under the contract, as before explained.

III. An estoppel is involved, the appellant maintains, because the appellees did not take possession of the goods, wares, and merchandise for the resale until after there was waste and loss. To put the thought differently, the appellant blames appellees for the waste

and loss due, first, to her mismanagement; and, second, to her abandonment of the property.

Of course, it is essential that appellees retake possession of the property for the purposes of resale and make the resale within a reasonable time under the facts and circumstances of the case. This issue of reasonable time was submitted to the jury, and that body found that appellees acted with the required promptness. Ordinarily the question as to what is a reasonable time within which to make the resale is one for the jury. Bodenheimer Molasses Co. v. Edenfield, 121 S. E. 862 (Ga.); Garcia & Maggini Co. v. Washton Dehydrated Food Co., 294 Fed. 765 (9th Circuit); Robson & Evans v. Hale & Son, 78 S. E. 177 (Ga.); Higgins v. California Prune & Apricot Growers, 16 Fed. (2nd) 190; Hausman v. Buchman, 179 N. Y. S. 26; Growers Exchange v. John A. Eck Co., 242 Pac. 391 (Utah).

In some of the cases above cited, a period of six months was held to be a reasonable time within which to retake the property and hold the resale. Here, the contract was made between the appellees and the appellant on December 11, 1930. Thereafter the appellant immediately took possession of the premises and commenced to operate the same through her agents and representatives A considerable time was consumed by the appellant in her unsuc· cessful endeavor to effect a rescission of the sale contract. Although after such delay the purchase price of the goods, wares, and merchandise was long past due under the contract, she did not pay the same to appellees, and the action for specific performance was commenced as above indicated. Some time was naturally consumed in instituting and trying the specific performance case. At the culmination thereof, as before stated, the district court disallowed a specific performance on the apparent theory that the appellant had performed the contract in all respects except in paying the purchase price. It seemed to be the theory of the district court at the specific performance trial that the appellees had a legal remedy which would enable them to procure the purchase price from the appellant. Subse· quent to the termination of the specifice performance action, it finally appeared that the appellant had abandoned the goods, wares, and merchandise involved.

Immediately after the disposition of the specific performance case, the appellees advised appellant on March 12, 1931, of their intention to inventory, appraise, and resell, on her behalf, the goods,

wares, and merchandise which she had abandoned. Following that, the inventory and appraisement were made. As soon as the inventory and appraisement were completed the sale was duly had on April 1, 1931.

Under all the circumstances, then, there was a basis in the record upon which the jury could find, as they did, that there was no estoppel as claimed by the appellant, but that the appellees acted with reasonable promptness when reselling the goods, wares, and merchandise.

IV.  There is no evidence in the record, the appellant contends, to indicate that the sale was in good faith or for the full value of the merchandise sold. Both the purchaser of the merchandise and the purchaser of fixtures, furniture, and equipment testified that the property sold for its fair and reasonable value.

Apparently the purchasers paid the appraised value in all instances, and in some cases more. Furthermore, there is evidence indicating that the goods, wares, and merchandise sold for as much at the sale in question as they would have brought if included in a sale of the business as a going concern. So far as the question of sale price is concerned, then, the jury was fully warranted in finding that the property sold for the best price obtainable therefor.

Consequently there remains for discussion the other phase of the objection, to wit, that the sale was not conducted in good faith. Obviously this proposition was very largely disposed of under the finding that the price was fair and reasonable. When answering the appellees' petition in this case, the appellant did not plead fraud. The appellant at the trial defended upon the theory that the appellees had not adopted the proper measure of damages, that the contract of sale was rescinded, and that the appellees unduly delayed before reselling the property. She introduced no evidence indicating in any way that the appellees did not conduct the sale in good faith. Under the evidence, the jury could well find, as it did, that the appellees conducted the sale in the best of faith, fairly and openly. They tendered to the appellant the new inventory and appraisement for her inspection before the sale. Although the appellant was duly notified of the resale, she did not appear at the time and place thereof to bid on any of the property offered. Apparently the total received at the resale, when added to the amount obtained by the appellant from sales negotiated by her through her employees while she was in charge of the business, will approximately aggregate

the original sale price. Fraud, therefore, is not proven, and on the other hand, it affirmatively appears that the resale was fairly conducted in good faith.

V. In submitting the issues to the jury, the district court permitted that body to allow appellees, as additional damages, the rental of the building in which the business was conducted. Such rental covered a period extending from the time the appellant took possession of the premises until the resale was completed. When the sale contract was consummated, the appellees had a lease on the premises for a term extending beyond the time that the resale was completed. As part of the sale agreement, this lease was to be assigned to the appellant by the appellees. It was so assigned and tendered to the appellant by the appellees, the jury could, and evidently did, find. Thereafter, under the contract of assignment, appellant was to pay the rent.

Although the lease was thus assigned and tendered to the appellant, she refused to pay the rent thereunder. She thus refused to pay the rent although until the time of her abandonment of the goods, wares, and merchandise above named she occupied the premises through her agents and employees. Because the appellant did not pay the rent according to the lease assigned to her, the appellees were required to pay the same under their original obligation on the lease. The appellees did so pay the rent for the period under consideration and such payments on their part are made the basis for recovery in the case at bar. Said lease for the unexpired term remaining after the above-mentioned resale was sold at such resale to L. L. Stoddard, who also purchased the above-named furniture, fixtures, and equipment.

Obviously, under all the circumstances, the district court properly submitted to the jury the rent issue here under consideration, and that body, on sufficient evidence, found in appellees' favor.

VI. There is some indication on the appellant's part that she complains because the district court permitted the jury to allow the appellees the amount of the $2,000 check placed in escrow when the original sale contract was made. A serious question arises whether the appellant has appealed from this part of the judgment. For the purposes of this discussion, however, it is assumed, without deciding, that she has so appealed.

This check, it will be recalled, was executed by the appellant in escrow to be delivered when the sale transaction was consum-

mated. As before stated, the check covered the good will of the business and the Firestone Tire & Rubber Co. contract and franchise assigned and sold to the appellant. She kept the Firestone contract and franchise. So, too, it appears that she kept and appropriated to her own use the good will of the business purchased. Thereby the appellant, through her own conduct, divided the contract and performed part and breached part thereof. The full consideration for the good will and the Firestone contract and franchise was separated by the sellers and the purchaser from the other consideration named in the contract and fixed at $2,000. Hence the check for that amount was executed by the appellant and placed in escrow to be delivered to the appellees when the sale contract was consummated. This contract was consummated, according to the jury's findings, and accordingly the check was properly delivered by the escrow holder to the appellees. Under the appellant's own conduct in herself dividing the contract for the purpose of performance and under the theory of the trial the appellees were properly allowed to collect on the check. See Downey v. Riggs, 102 Iowa 88; Thompson v. Killheffer, 119 A. 770 (N. J.).

Consideration now has been given to all the assignments of error argued by the appellant. Therefore, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

STEVENS, C. J., and EVANS, ALBERT, and CLAUSSEN, JJ., concur.

BLISS, J., took no part.