## KNUDSEN MUSIC CO. v. MASTERSON.

No. 7696.   Decided February 15, 1952.   (240 P. 2d 973.)

See 55 C. J., Sales, sec. 1349. Conditional vendor, sale after repossession by. 47 Am. Jur., Sales, secs. 966-969; 99 A. L. R. 1288, 1301.

*Skeen, Thurman & Worsley,* and *Verl C. Ritchie,* all of Salt Lake City, for appellant.

*Leon M. Frazier, Jackson B. Howard,* Provo, for respondent.

CROCKETT, Justice.

Plaintiff recovered judgment against the defendant under the provisions of a conditional sales contract, after repossessing and selling certain juke boxes and equipment which he had sold to the defendant, and crediting ∎ the proceeds to the defendant. The points raised on this appeal will be treated in connection with our review of the facts, which are stated most favorably to the plaintiff wherever there is conflict in the evidence.

The defendant purchased from the plaintiff several such machines and placed them on his route in cafes and taverns. At the time the contract herein sued on was executed, the defendant owed the plaintiff some money on prior purchases. He arranged to turn in two machines identified as 1100's for credit on two 1080 Wurlitzers. These two, two other record players which the defendant was purchasing, known as 1015's, together with a certain selector mechanism called a Gizmo, were included in the new conditional sales contract and the previous one was cancelled.

The new contract provided for respossession in case of default, and also that:

"In the event of * * * reposession seller may resell the said property at either public or private sale * * * seller may bid at any sale. The proceeds of any such sale, after deducting all liens, expenses [etc.] * * * shall be applied to the amount due * * * and the surplus, if any, shall be paid to purchaser; in the event of a deficiency remaining, * * * purchaser agrees to pay the amount of such deficiency * * *."

The defendant failed to pay any installments on the new contract, and after the second installment was due or about to become due in April, 1950, the plaintiff contacted defendant and told him that unless payment was made he would have to repossess the machines. Payment was not made, and in May, after the defendant had refused to return the machines to the seller at his own expense, the machines were picked up by the plaintiff who brought them

back to his place of business. After some minor repairs and reconditioning, they were placed on the floor and sold the same as any other machines which plaintiff had for sale. Plaintiff credited defendant with the value of the machines and sued for the difference under the contract.

Defendant's first defense in that the machines were defective and unsuited for his use and that he had a right to and did rescind the contract. The contract contained a provision that there were no warranties made by the seller except those specifically noted. There was, however, a written warranty from the Wurlitzer Company on each of the machines. Defendant conceded that plaintiff made no representations as to the condition of the machines. It is taken for granted that they carried the usual implied warranty of reasonable suitability for the purpose intended. Defendant testified that when he uncrated the new machines (1080's) they were rusted and corroded, that it entailed considerable work to get them in shape, and thereafter their service was so unsatisfactory that he had two or three service calls a week to keep them in operation. He also testified that they jeopardized two of his finest locations because they wouldn't work right and that the machines produced no revenue so that he was unable to make his payments on them.

The trial court found that there were no substantial defects in the machines and that there had been no rescission. The evidence supports this determination. With respect to the 1015 machines, defendant certainly could not complain of defects because they had been in his possession under the earlier contract for some time prior to their inclusion in the later one upon which the suit was brought. Defendant was familiar with Wurlitzer record players, and was at that time using some earlier models in his business; these were delivered to him while still in their packing cases. He opened and examined them, and although he claimed they were defective, he acknowledged that he put the machines out on location and thought

that they were good enough to operate. He never at any time gave any indication or hint to the plaintiff that he was dissatisfied until after two payments were due under the contract and he was pressed for payment or threatened with repossession. It is undisputed that the machines were kept on location producing revenue for the defendant until repossession. The plaintiff testified that he personally examined the machines when they were returned and that except for the replacement of burned out globes and minor adjustments they were in good condition, and bore no evidence of pitting or rust. Whether there has been a rescission is a question of fact. *Smith* v. *Columbus Buggy Company*, 40 Utah 580, 123 P. 580. There being substantial competent evidence to support the findings of the court that there was no breach of warranty and no rescission, those findings will not be disturbed.

In further support of the determination made by the trial court, it should also be observed that ordinarily where a buyer continues to use a defective machine to derive benefits therefrom he waives his right to rescission. *Advance-Rumely Thresher Company, Inc.,* v. *Stohl,* 75 Utah 124, 283 P. 731; and if he wishes to rescind a contract he must manifest his election to do so without undue delay or the right will be lost. Williston on Sales, Rev. Ed., Sec. 611.

The defendant also claims that the judgment is erroneous because the plaintiff did not proceed exactly as the terms of the contract require to credit the plaintiff with the amount of the proceeds of the sale. The actual fact as found by the court is that the plaintiff credited the defendant with the market value of the machines, which is more than the amount realized from their sale. Admittedly, it was the plaintiff's duty to exercise reasonable diligence and effort to make a resale of the repossessed property within a reasonable time; to procure the best possible price therefore, and credit the defendant with the proceeds as specified in the contract. Whether

he discharged this duty is also a question of fact. *Courshon Co.* v. *Brewer*, 215 Iowa 885, 245 N. W. 354; *Hausman* v. *Buchman*, 189 App. Div. 597, 179 N. Y. S. 26; *Mayflower Mills* v. *Hardy*, 138 Va. 138, 120 S. E. 861; *Crawford* v. *Dahlenberg*, 221 Mo. App. Rep. 600, 283 S. W. 65; *Frankel* v. *Foreman & Clark*, 2 Cir., 33 F. 2d 83.

In pursuing this duty, after the plaintiff had made the minor repairs and conditioning for sale as indicated, he left them on the floor for sale the same as his other machines. He advertised them, together with his other merchandise, through circulars and through salesmen who covered Utah, Idaho and Wyoming in an effort to sell them. The plaintiff introduced evidence in the form of exhibits and testimony of the amount which each machine brought when resold, and the name of the purchasers of all but one machine, which couldn't be identified, but for which plaintiff allowed the highest price any such machine had sold for. The court granted a motion to strike these exhibits from the record. The ruling was erroneous. They were material to determine the amount plaintiff was entitled to recover under the contract. The testimony as to resale is before us and shows that the machines were actually sold for a lesser amount than the evaluation placed upon them by the plaintiff and for which he gave the defendant credit. This evaluation was arrived at by taking the reported sales of similar machines in a national trade list called "Cash Box" at the time of repossession and averaging these reported sales. The court found this to be the reasonable market value of the machines when returned to the plaintiff and deducted it from the balance remaining due on the contract. Although it is a different credit than that which defendant was entitled to, he should not be heard to complain because he received credit for more than the machines actually sold for.

The plaintiff exercised reasonable diligence, made an effort in good faith to get the highest possible price, and sold them within a reasonable time, which was all he was

required to do. This is clearly not a case where the court could rule as a matter of law that the plaintiff failed in such duty.

Defendant also raises the objection that it did not appear that all of the machines were sold at the time the complaint was filed. However that may be, they were all sold prior to the time of trial, so defendant suffered no prejudice therefrom.

The conclusion of law that the plaintiff was entitled to a judgment in the sum of $1860.96, balance due on the contract, was obviously an inadvertence. In arriving at its judgment, the court deducted from that sum the amount credited to the defendant on the return of the machines, and only entered judgment for the difference. Thus, defendant, was not prejudiced by this error in the conclusion of law attacked.

Judgment affirmed. Costs to respondent.

WOLFE, C. J., and WADE, McDONOUGH, and HENRIOD, JJ., concur.